UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, <br><br> *Plaintiff*; <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-935-PLF <br><br> Judge Paul L. Friedman |

### DEFENDANTS' MOTION TO STAY PENDING APPEAL

By Order and Memorandum Opinion, respectively dated April 25, 2025 and April 28, 2025, this Court enjoined the President's national-security determination that Defendant agencies should be excluded from the coverage of the Federal Service Labor Management Relations Statute ("FSLMRS"). *See* Order, ECF No. 32 (Apr. 25, 2025); Mem. Op., ECF No. 34 (Apr. 28, 2025). For reasons explained herein, Defendants have appealed that decision and now move for a stay pending appeal.[1] That request should be granted because Defendants can show a likelihood of success on the merits, irreparable injury in the absence of a stay, and that a stay is in the public interest and will not injure Plaintiff. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

### ARGUMENT

**I.   The Government is Likely to Succeed on Appeal.**

As an initial matter, jurisdiction is precluded in this case. Congress made clear that the Federal Labor Relations Authority ("FLRA") was the proper channel for the types of claims Plaintiff raises here. *See* 5 U.S.C. §§ 7118(a)(1), 7121. That the FLRA might decline to decide a charge brought by Plaintiff for want of jurisdiction does not confer jurisdiction in this Court. Indeed, in *American Federation of Government Employees, AFL-CIO v. Trump*, 929 F.3d 748

---

[1] Federal Rule of Appellate Procedure 8(a)(1) provides that "a party must ordinarily move first in the district court" for an order staying an injunction pending appeal. Defendants are accordingly seeking that relief in this Court.

(D.C. Cir. 2019), the D.C. Circuit observed that its jurisdiction is not "derivative" of the FLRA's jurisdiction. *Id.* at 758. The D.C. Circuit "may review the unions' broad statutory and constitutional claims on appeal from an FLRA proceeding *even if the FLRA cannot*." *Id.* (emphasis added). The D.C. Circuit reiterated that the statutory review scheme is "exclusive" and "the unions may not bypass [this scheme] by filing suit in the district court." *Id.* at 761; *see also Am. Fed'n of Gov't Emps., Nat'l Council of HUD Locs. Council 222, AFL-CIO v. Fed. Lab. Rels. Auth.*, 99 F.4th 585, 593 (D.C. Cir. 2024) (describing "unbroken line of circuit precedent dealing with § 7123(a)," which has consistently held that district courts lack jurisdiction over disputes arising under the FSLMRS).

Moreover, the fact that Plaintiff itself brought a case before the FLRA further supports Defendants' position. As Defendants advanced at oral argument and in their briefing, Congress created a special administrative review scheme that this Court must respect. Accordingly, Plaintiff must bring its claims to the FLRA. If the FLRA concludes that it does not have jurisdiction to reach those claims, *see Am. Fed'n of Gov't Emps.,* 929 F.3d at 759, Plaintiff can appeal the FLRA's dismissal to a court of appeals. *Id.*; 5 U.S.C. § 7123(a). Because Defendants are likely to succeed on this question on appeal, the Court should grant Defendants' stay on this basis.

Even assuming jurisdiction, Defendants are likely to succeed on the merits of their appeal. No *ultra vires* action occurred here. Section 7103(b)(1) entrusts the relevant determinations to the President alone, without interference from courts or other actors. This Court's memorandum opinion remarks on the "meager" descriptions provided in Defendants' briefing for each Defendant agency, Mem. Op. at 26. Not even these descriptions—which set forth reasonable explanations of how each agency meets the relevant statutory criteria—are necessary. Indeed, the President need not even "insert written findings in an exempting order[]" under § 7103(b)(1). *AFGE v. Reagan*, 870 F.2d 723, 727 (D.C. Cir. 1989). Any other conclusion would be flatly inconsistent with the deference regularly due the President's national security-related determinations. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 686 (2018) (dismissing as "inconsistent with the broad statutory text and the deference traditionally accorded the President in th[e national security] sphere" an argument

"for a searching inquiry into . . . the President's justifications" for a finding about national interests).

Here, the President's consideration of Plaintiff's grievance activities was appropriate in exercising his statutory authority. Section 7103(b) represents Congress's assessment that union activity, though potentially beneficial in some circumstances, may impede agency operations and thereby pose risks to national security that the President must be able to mitigate by exempting agencies from collective-bargaining requirements. The statute therefore empowers the President to limit Chapter 71's coverage when he determines that an agency has investigative or national security work as a primary function and that union activity or the provisions of Chapter 71 are incompatible with his assessment of national-security considerations.

Plaintiff's and this Court's focus on the White House Press Office Fact Sheet's reference to union efforts to impede the President's agenda, *see, e.g.*, Mem. Op. at 21, thus miss the mark. The Fact Sheet explains how unions' activities have impaired the functioning of agencies in a manner that could undermine national security. It notes, for example, that the FSLMRS can "enable[] hostile Federal unions to obstruct agency management" by preventing agencies from removing employees for poor performance or misconduct and impede agencies from taking other operational measures including, for example, "modify[ing] cybersecurity policies." The White House, *Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements*, https://perma.cc/Y7HR-4W3H (Mar. 27, 2025) (Fact Sheet). President Trump issued the Executive Order to protect "his ability to manage agencies with vital national security missions" and "to ensure that agencies vital to national security can execute their missions without delay and protect the American people." *Id.* Likewise, the OPM guidance does not demonstrate that the Executive Order was motivated by unrelated policy goals. *See* Mem. Op. 23-24. The guidance notes the policy of this Administration "to eliminate waste, bloat, and insularity" within agencies, OPM Guidance 5, and as applied to agencies that have as a primary function intelligence, investigative, or national-security work, these policies are directly relevant to the policy goals of § 7103(b)(1). Because Section 7103(b)

3

clearly contemplates actions like the Executive Order, Defendants have demonstrated a likelihood of success on appeal with respect to Plaintiff's *ultra vires* claims.

## II. The Remaining Factors Favor a Stay.

The remaining factors, whether Defendants will be irreparably harmed absent a stay; whether issuance of the stay will substantially injure the other parties interested in the proceeding; and where the public interest lies, all favor a stay in this case.

### A. Defendants and the Public Will Be Harmed Absent a Stay.

The injunction impinges on Defendants' ability to redirect their employees to mission-oriented work that advances national security. Further, the injunction undermines Executive Branch governance and irreparably undermines the President's authority to "prescribe regulations for the conduct of employees in the executive branch." 5 U.S.C. § 7301. That encroachment on the President's prerogatives is especially intolerable in the national-security context, where the President must be able to act swiftly and decisively. *See Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("executive decisions" in the national-security realm require "delicate, complex" assessments and rapid responses from agencies and employees).

For similar reasons, the public interest favors a stay pending appeal. The preliminary injunctive relief granted by this Court constitutes an extraordinary intrusion into the President's authority specifically conferred by 5 U.S.C. § 7103(b)(1) to make determinations as to whether agencies with a primary national security function should be excluded from FSLMRS coverage.

### B. Plaintiff Will Not Be Harmed by a Stay.

As the Government has repeatedly explained, its current guidance expressly advises Defendant agencies not to terminate their collective bargaining agreements ("CBAs") with Plaintiff. Together with the speculative (loss of bargaining power) or remediable (loss of dues) harms Plaintiff asserts, this factor supports a stay.

It is speculative to think that employees will leave the union even before their CBAs have been terminated and while this litigation is ongoing. The Court's conclusion that "there is a substantial possibility that only a small fraction of its once large union would remain upon

4

prevailing in this litigation" is, respectfully, likewise speculative. Mem. Op. at 36. Regardless, "substantial possibility" is not the certain harm required here. *Cf. Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297-98 (D.C. Cir. 2006) (to warrant a preliminary injunction, movant must show an injury that is "both certain and great," "actual and not theoretical," and "speculative" injury will not suffice (quotation marks omitted)).

Moreover, "economic loss does not, in and of itself, constitute irreparable harm," *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). In any event, Plaintiff remains free to collect dues directly from its members rather than through payroll deductions. And should Plaintiff prevail on the merits, the FLRA would have broad discretion to fashion appropriate remedies to make NTEU whole, including by requiring Defendant agencies to compensate for revenues lost from the failure to withhold dues. Indeed, the FLRA has issued such relief in the past. *E.g.*, *U.S. Dep't of Def., Ohio Nat'l Guard*, 71 F.L.R.A. 829, 830 (2020); *U.S. Dep't of the Treasury, U.S. Mint*, 35 F.L.R.A. 1095, 1100-1102 (1990).

## CONCLUSION

For the foregoing reasons, this Court should enter a stay pending appeal.

DATED: April 30, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
EMILY M. HALL
SARAH E. WELCH
Counsel to the Assistant Attorney General
Civil Division

ERIC HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

ALEXANDER K. HAAS
Director
Civil Division, Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Assistant Branch Director
Civil Division, Federal Programs Branch

  */s/ Lydia Jines*
LYDIA JINES (MD Bar No. 2205230001)

5

                          JEREMY MAURITZEN
                          Trial Attorneys
                          LISA ZEIDNER MARCUS
                          Senior Counsel
                          U.S. Department of Justice, Civil Division
                          Federal Programs Branch
                          1100 L St., NW, Twelfth Floor
                          Washington, DC 20530
                          Tel: (202) 353-5652
                          Fax: (202) 616-8470
                          Email: Lydia.Jines@usdoj.gov

                          *Counsel for Defendants*