UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
                                       )
NATIONAL TREASURY EMPLOYEES   )
UNION,                                   )
                                       )
             Plaintiff,            )
                                       )
          v.                     )       Civil Action No. 25-0935 (PLF)
                                       )
DONALD J. TRUMP et al.,          )
                                       )
            Defendants.       )
_____)

MEMORANDUM OPINION AND ORDER

On April 25, 2025, the Court issued a preliminary injunction enjoining implementation of Section 2 of Executive Order 14251, titled "Exclusions from Federal Labor-Management Relations Programs," Exec. Order No. 14251, 90 Fed. Reg. 14553 (Mar. 27, 2025), which excluded numerous agencies and subdivisions from the Federal Service Labor-Management Relations Statute ("FSLMRS"). See Nat'l Treasury Emps. Union v. Trump, Civil Action No. 25-0935 (PLF), 2025 WL 1201696 (D.D.C. Apr. 25, 2025) (Order); Nat'l Treasury Emps. Union v. Trump, Civil Action No. 25-0935 (PLF), 2025 WL 1218044 (D.D.C. Apr. 28, 2025) (Opinion). The government appealed this decision, see Notice of Appeal [Dkt. No. 35], and filed a motion to stay the preliminary injunction pending appeal, which this Court denied. See Minute Order of May 1, 2025. On May 16, 2025, the United States Court of Appeals for the District of Columbia Circuit issued an order staying this Court's injunction pending appeal. See National Treasury Employees Union v. Trump, No. 25-5157, Order (D.C. Cir. May 16, 2025) ("D.C. Circuit Order").

In staying the injunction, the D.C. Circuit majority concluded that plaintiff National Treasury Employees Union ("NTEU") had "failed to establish irreparable harm" and that this failure was "a sufficient basis for vacating [the] preliminary injunction."  D.C. Circuit Order at 1-2.[1]  In reaching its conclusion, the court of appeals reasoned that NTEU's two purported irreparable harms – that it (1) "will lose bargaining power and suffer reputational harm that will deter present and future membership," and (2) "will suffer an irreparable financial injury from the loss of automatically withheld union dues" – were insufficient to warrant a preliminary injunction.  See id. at 2.

As to the loss of bargaining power, the Circuit highlighted a "Frequently Asked Questions" document published on April 8, 2025 – approximately four days after NTEU moved for a preliminary injunction – by the Chief Human Capital Officers Council ("CHCOC"), see D.C. Circuit Order at 2, which states that "[a]gencies should not terminate any CBAs until the conclusion of litigation or further guidance from OPM directing such termination" and that "[a]gencies should not file any decertification petitions until litigation regarding [the Executive Order] has been resolved."  See Ex. 1-B to Declaration of Allen R. Brooks [Dkt. No. 26-1 at ECF 13] ("CHCOC FAQs"); see also Declaration of Allen R. Brooks [Dkt. No. 26-1] ¶ 6 (stating that agencies had been instructed to "not terminate any collective bargaining agreements ("CBAs") until the conclusion of litigation or further guidance from OPM directing such termination"); Nat'l Treasury Emps. Union v. Trump, 2025 WL 1218044, at *18 (discussing CHCOC FAQs).  The Circuit reasoned that this instruction in the OPM FAQs rendered NTEU's harms "speculative because they would materialize only after an agency terminates a collective-

---

[1]    The D.C. Circuit did not vacate this Court's preliminary injunction order.  Instead, the Circuit's order only stays this Court's preliminary injunction order pending the appeal of that order.

bargaining agreement, and the Government directed agencies to <u>refrain</u> from terminating collective-bargaining agreements or decertifying bargaining units until after the litigation concludes." D.C. Circuit Order at 2 (emphasis in original). The Circuit made clear, however, that "if a specific agency or subagency deviates from that self-imposed rule, individual units may seek injunctive relief appropriately tailored to any nonspeculative, irreparable harm." <u>Id</u>. at 2 n.3.

Given the Circuit's clarification that NTEU could "seek injunctive relief" if "a specific agency or subagency deviates from [its] self-imposed rule," D.C. Circuit Order at 2 n.3, the Court will instruct the parties to meet and confer and file a joint status report apprising the Court of proposed next steps for this litigation. As this Court found in its opinion granting NTEU's motion for a preliminary injunction, NTEU has presented substantial evidence reflecting that certain agencies and subdivisions are disregarding provisions in the respective collective bargaining agreements "notwithstanding the lack of the formal cancellation of the collective bargaining agreements." <u>See</u> <u>Nat'l Treasury Emps. Union v. Trump</u>, 2025 WL 1218044, at *18. A sworn declaration from NTEU's Director of Field Operations, Daniel Kaspar, lists numerous actions certain agencies and subdivisions have taken already that reflect a disregard or violation of the collective bargaining agreements, including:

> 9. Agencies are stopping payroll deductions for dues payments from NTEU members to NTEU.
>
> 10. For example, [Interior Business Center] stated in a March 28, 2025 email that "[a]s a result of Executive Order 'Exclusions from Federal Labor-Management Relations Programs' published March 27, 2025, the Interior Business Center (IBC) was directed to remove all union deductions from the Pay Period 25-07 calculate file." (Exhibit 1).
>
> 11. Updating an earlier notice, [National Finance Center] stated in an April 9, 2025 email that it was providing additional information

"regarding halting union dues deductions" and was taking action "to ensure the termination of future union deductions[.]" (Exhibit 2).

12.   Consistent with these statements from payroll processing entities, some agencies have notified NTEU that they have stopped dues withholding. For example, [Alcohol and Tobacco Tax and Trade Bureau ("TTB")] told NTEU on April 11, 2025 that "[p]ursuant to the executive order signed on March 27, 2025, Exclusions from Federal Labor-Management Relations Programs, the National Finance Center (NFC) will be halting union dues deductions for covered Treasury Bureaus . . . effective pay period 6 (March 23, 2025 through April 5, 2025) and beyond." (Exhibit 3).

13.   At the end of pay period March 9, 2025-March 22, 2025, NTEU lost more than a million dollars in dues that it otherwise would have received, if agencies had not halted automatic dues withholding.

14.   At the end of pay period March 23, 2025-April 6, 2025, NTEU again lost more than a million dollars in dues that it otherwise would have received, if agencies had not halted automatic dues withholding.

15.   In addition to agencies' refusal to comply with statutory and contractual dues withholding requirements, agencies are refusing to comply with other collective bargaining agreement provisions as well.

16.   For example, the IRS sent out a notice to employees on April 4, 2025, stating that "[t]he IRS has begun implementing a Reduction in Force (RIF) that will result in staffing cuts across multiple offices and job categories." (Exhibit 4). The IRS is beginning this process without following the RIF provisions in the IRS-NTEU collective bargaining agreement, such as required advance notice to NTEU's President.

17.   Indeed, IRS notices to employees affected by the RIF explicitly disavow any obligation to bargain or otherwise follow relevant collective bargaining agreement provisions. The notices state:

> Collective    bargaining    agreements    required additional steps before proceeding with a RIF, including extended negotiation periods and waiting periods. However, President Trump signed an executive order entitled "Exclusions from Federal Labor-Management    Relations    Programs." Application of the national security exemption from

collective-bargaining requirements under this executive order and resulting guidance from the Office of Personnel Management eliminates non-statutory delays in executing a RIF.

(Exhibit 5).

18.  Agencies are refusing to sit at the bargaining table with NTEU. For example, [Bureau of Land Management ("BLM")] stated in an April 2, 2025, email that "[d]ue to the issuance of Executive Order and OPM Guidance:  Exclusions From Federal Labor-Management Relations Programs . . . [w]e will be postponing the CBA negotiations scheduled for April 3rd." (Exhibit 6).  And on April 11, 2025, BLM told NTEU that it would be postponing a scheduled Labor Management Relations Committee meeting scheduled for April 14 because of the Executive Order.  (Exhibit 7).

19.  BLM also stated in an April 8, 2025 email that it would not bargain with NTEU over the agency's offering of a deferred resignation program because "[c]onsistent with Executive Order 14251, 'Exclusions from Federal Labor-Management Relations Programs,' which was issued on March 27, 2025, the BLM is excluded from Chapter 71 of Title 5 . . . ." (Exhibit 8).

20.  Agencies are refusing to participate in grievance proceedings. For example, an IRS representative told NTEU staff on April 2, 2025, in connection with a pending national grievance and unfair labor practice charge, that "[d]ue to the Executive Order on Thursday, we are currently in a holding pattern in terms of grievances." (Exhibit 9).

21.  TTB told NTEU on April 14 that as a result of the Executive Order, "TTB has suspended (until further notice) all proceedings under the CBA including but not limited to:  grievances under the Negotiated Grievance Process (NGP), Partnership Council, midterm bargaining, and Requests for Information, etc." (Exhibit 10).

22. On April 10, 2025, a representative from the IRS Office of Chief Counsel refused to move forward with arrangements for a long-scheduled arbitration because they were "awaiting further guidance on the Executive Order relating to the CBA." (Exhibit 11).

23.  Under law (5 U.S.C. § 7131(a)) and under all of NTEU's collective bargaining agreements, NTEU stewards are allowed to request "official time" to conduct representational duties during the workday.  But BLM told NTEU on April 1, 2025, that it was

disapproving use of "LRG and LRD" for certain dates. (Exhibit 12). These codes mean authorized official time.

24.  Management at the Food and Drug Administration (FDA) told NTEU on March 31, 2025 that "[u]ntil further notice, the FDA is ending labor relation meetings with the exclusive representatives of (NTEU/AFGE) in adherence to the above referenced presidential Executive Order." (Exhibit 13).  And the FDA told NTEU April 8, 2025, that NTEU stewards would not be allowed to participate in formal meetings with employees, stating that "to comply with EO 14251, Exclusions from Federal Labor-Management Relations Programs . . . management participating in this meeting will not be engaging with NTEU . . . ." (Exhibit 14).  On April 9, the FDA rescinded its previous approval of NTEU's presence at a meeting between management and an employee, again citing the Executive Order. (Exhibit 15).

25.  Arbitrators are beginning to stop action on lawfully filed grievances because of the Executive Order, which harms NTEU's ability to carry out its mission of fighting for employee and union rights through grievances.  For example, Arbitrator Stephen E. Alpern informed NTEU on April 3, 2025 that he was staying further proceedings in a grievance about the validity of the BLM and NTEU collective bargaining agreement because "the Agency raises the contention that [pursuant to] an Executive Order 14251 (90 FR 14553, March 27, 2025), the President excluded the Agency from the provisions of Chapter 7 of title 5, United States Code." (Exhibit 16).

Supplemental Declaration of Daniel Kaspar ("Kaspar Supp. Decl.") [Dkt. No. 29-1] ¶¶ 9-25;

Nat'l Treasury Emps. Union v. Trump, 2025 WL 1218044, at *17-19 (discussing action set forth

in Kaspar Supp. Decl.).

     While NTEU may not have shown that any agency has formally cancelled a

collective bargaining agreement, the abovementioned actions demonstrate that certain agencies

have in essence disregarded critical provisions of the collective bargaining agreements.

Furthermore, the actions demonstrate that certain agencies are operating in accordance with the

Executive Order by setting aside core provisions of the FSLMRS that Congress unequivocally

deemed to be "in the public interest."  See 5 U.S.C. § 7101(a); see also Charles Ezell, Guidance

6

on Executive Order Exclusions from Federal Labor-Management Programs, OPM, Mar. 27,

2025, https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-executive-order-

exclusions-from-federal-labor-management-programs.pdf [https://perma.cc/QH4A-MQ9F]

(stating that agencies "are no longer required to collectively bargain with federal unions" and

that federal unions "lose their status as the 'exclusively recognized' labor organizations for

employees of the agencies and agency subdivisions covered by Exclusions" in the Executive

Order) (alterations omitted).  Such deviations from protections and labor practices that Congress

has unequivocally found to be "in the public interest," see 5 U.S.C. § 7101(a), and that have been

"the state of affairs that has existed for nearly half a century," D.C. Circuit Order (Childs, J.,

dissenting) at 4, are noteworthy and are harmful to NTEU.

Accordingly, in view of the Circuit's clarification that NTEU "may seek

injunctive relief" "if a specific agency or subagency deviates from [the Administration's] self-

imposed rule" that it will not cancel collective bargaining agreements until the conclusion of

litigation or further guidance from OPM directing such termination, see D.C Circuit Order at 2

n.3, it is hereby

ORDERED that the parties shall meet and confer and submit a joint status report

on or before 12:00 p.m. on May 22, 2025.  The joint status report shall provide proposed next

steps for this litigation in light of the D.C. Circuit's May 16, 2025 Order.  The parties shall

provide a briefing schedule for any expected motions.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 5/20/25