# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, | ) ) ) | |
| Plaintiff; | ) ) | Case No. 1:25-cv-935-PLF |
| v. | ) ) ) | Judge Paul L. Friedman |
| DONALD J. TRUMP, et al., | ) ) | |
| Defendants. | ) ) ) | |

**DECLARATION OF CHRISTINA V. BALLANCE**

I, Christina V. Ballance, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am the Executive Director of the National Labor and Employee Relations Office within the U.S. Department of Health and Human Services ("HHS"). I have held this position since August 2022. In my current role, I oversee the program and team responsible for oversight of HHS-wide labor and employee relations programs, including employee misconduct, strategic planning, and negotiations. Specifically, I negotiated bilateral collective bargaining agreements with the National Treasury Employee Union ("NTEU") and assess the overall labor-management relationship and identify training needs to reduce litigation and improve overall labor relations. Based on personal knowledge and information provided to me in the course of my official duties, I provide this declaration in support of Defendants' opposition to Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment in the above-captioned case.

2.      Section 2 of Executive Order 14,251, *Exclusions from Federal Labor-Management Relations Programs* ("Executive Order"), excludes the following agencies and subdivisions of HHS from coverage under chapter 71 of title 5, United States Code:

    a. Office of the Secretary;

    b. Food and Drug Administration ("FDA");

    c. Centers for Disease Control and Prevention ("CDC");

    d. Administration for Strategic Preparedness and Response ("ASPR");

    e. Office of the General Counsel ("OGC");

    f. Office of Refugee Resettlement, Administration for Children and Families ("ORR");

    g. National Institute of Allergy and Infectious Diseases, National Institutes of Health ("NIAID").

Exec. Order No. 14251 § 2, 90 Fed. Reg. 14553, 14553-54 (Apr. 3, 2025).

3.    Of those excluded agencies and subdivisions, Plaintiff National Treasury Employees Union ("NTEU") only represents HHS employees in the following: Office of the Secretary, including OGC; FDA; ASPR; and ORR. Therefore, the remainder of this declaration will focus on those agencies and subdivisions.

4.    Those HHS agencies and subdivisions play major roles in, and have as primary functions, the protection and preservation of the military, economic, and productive strength of the United States, given their critical roles in anticipating, identifying, and responding to biological, chemical, radiological, and pandemic threats—threats which, if left unaddressed, could cripple national infrastructure, devastate economic activity, and imperil civilian and military readiness:

    a. **HHS – Office of the Secretary.** The Office of the Secretary plays a central command-and-control role in national security by wielding statutory authority to declare and manage public health emergencies, including those involving pandemics and bioterrorism, under 42 U.S.C. § 247d(a). This function places

2

the Secretary at the forefront of national readiness and crisis response. Given the nature of these responsibilities, the Office must have maximum operational latitude to adapt internal policies, deploy emergency resources, and coordinate interagency responses without delay.

b. **OGC.** OGC is the chief legal office to HHS and ensures the department's initiatives are guided by a strong legal framework while adapting to emerging challenges in national security, intelligence, and investigations. In the age of global pandemics, bioterrorism threats, and cybersecurity challenges, OGC ensures that HHS policies and programs align with national security objectives, including providing legal guidance on protecting healthcare systems from cyberattacks, safeguarding the health and security of the American people by shaping policies that protect against pandemics to addressing emerging threats in bioterrorism. Considering its central role in providing legal advice to the Office of the Secretary and all agency subdivisions in rapidly developing situations, such as global pandemics, bioterrorism threats, and cybersecurity challenges, OGC must retain a flexible posture to expeditiously respond to national security incidents.

c. **FDA.** The FDA's investigative and regulatory functions extend beyond public health to encompass national economic and security interests. FDA is best known for investigating the efficacy of drugs and medical treatments like vaccines. These investigative functions also directly affect America's economic and productive strength—for example, the FDA's rapid approval of the COVID-19 vaccine facilitated the reopening of the American economy.

3

Likewise, a secure food supply is critical to national security, as Congress recognized in 2011 by passing the Food Safety Modernization Act to enhance the FDA's authority to prevent and respond to foodborne threats, including terrorist threats. *See* Pub. L. No. 111-353, 124 Stat. 3885. Likewise, preparedness for chemical, biological, radiological, and nuclear threats is a key part of FDA's mission, as it collaborates with other agencies to approve and stockpile treatments for national security threats such as anthrax, smallpox, and the like. And the FDA's authority to issue Emergency Use Authorization for critical treatments, such as the COVID-19 vaccine, represents an important part of its mission and a crucial tool for maintaining the country's military, economic, and productive strength. Flexibility to modify review processes and mobilize emergency actions is indispensable for fulfilling its national security responsibilities.

d. **ASPR.** ASPR serves as the nation's primary coordinator for health-related emergency preparedness and response, including responses to chemical, biological, radiological, and nuclear (CBRN) incidents. *See* 42 U.S.C § 300hh-10(f)(1) ("[T]he Assistant Secretary for Preparedness and Response shall implement strategic initiatives or activities to address threats, including pandemic influenza and which may include a chemical, biological, radiological, or nuclear agent . . . that pose a significant level of risk to public health and national security."). ASPR's ability to operationalize emergency response frameworks and rapidly implement policy changes is essential to safeguarding civilian populations and national infrastructure during crisis events.

4

e. **ORR.** While largely humanitarian in mission, ORR's work executing immigration policy—a matter at the intersection of public health and national security—is a primary function of the agency. The management of foreign national populations, including unaccompanied minors and individuals from regions with elevated security risks, requires close coordination with intelligence and law enforcement agencies. The ORR must retain discretion to implement policy changes that align with evolving national security directives and global migration patterns.

5. The current Collective Bargaining Agreement, HHS & NTEU 2023 National Agreement (NA), went into effect on July 2, 2023. Specifically, this Agreement applies to HHS professional and nonprofessional employees in the following Operating and Staff Divisions:

a. Office of the Secretary, including all staff divisions. This includes but is not limited to: OGC; Office of the Chief Information Officer; Assistant Secretary for Administration, including Program Support Center; Departmental Board of Appeals; and Office of Medicare Hearings and Appeals (OMHA).

b. FDA;

c. ASPR; and

d. ORR.

6. HHS has pivotal responsibilities in safeguarding public health, managing biodefense, ensuring economic stability, addressing global health threats, and fostering resilience against multifaceted crisis. National security may also be impacted via economic instability, cyberattack, natural disaster, pandemic illness, biohazards or bioweapons, and mass migration and refugee crisis. The HHS research centers, treatment facilities, care programs, scientists, inspectors,

and other personnel work collectively to mitigate and alleviate these potential social, economic, and health threats to our national security.

7.    HHS plays a critical role in national security through its public health infrastructure, management of emergency preparedness initiatives, and response to biosecurity risks.  The exempted HHS subdivisions are integral to intra-government coordination during pandemics, natural disasters, and biological threats.  These responsibilities require agility, confidentiality, and rapid decision-making, which are factors that could be hindered by traditional labor-management processes under the FSLMRS.

8.    As a general matter, the CBAs interfere with HHS's ability to execute and implement the President's initiatives related to national security.  For example, HHS cannot implement government-wide rules and regulations from the President that conflict with the CBA (without renegotiation and agreement with the unions).  Given these national security imperatives, applying the FSLMRS to the relevant HHS subdivision is inconsistent with national security requirements and considerations, as applying the FSLMRS risks delaying decisions and actions during times of national crisis.  It is critical that these HHS divisions retain the ability to swiftly implement and adjust policies and operational strategies to meet emerging threats.  The ability to respond without delay is not merely a matter of administrative efficiency—it is a national security necessity.  The Executive Order removes these obstacles.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 23, 2025.

CHRISTINA V.
BALLANCE -S

Digitally signed by
CHRISTINA V.
BALLANCE -S
Date: 2025.06.23
14:00:22 -04'00'

Christina V. Ballance
Executive Director

National Labor and Employee Relations Office
U.S. Department of Health and Human Services