# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, | ) ) ) ) | |
| *Plaintiff*; | ) ) | Case No. 1:25-cv-935-PLF |
| v. | ) ) | Judge Paul L. Friedman |
| DONALD J. TRUMP, *et al.*, | ) ) | |
| *Defendants*. | ) ) ) | |

**<u>DECLARATION OF MICHAEL MOLINA</u>**

I, Michael Molina, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am the Principal Deputy Assistant Administrator for Mission Support at the United States Environmental Protection Agency ("EPA" or "the Agency"), in the Office of Mission Support, and I have served in this role since February 24, 2025.  In my current role I oversee the organization responsible for the negotiation of all term union agreements at EPA.  Based on personal knowledge and information provided to me in the course of my official duties, I provide this declaration in support of Defendants' opposition to Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment in the above-captioned case.

2.      Section 2 of Executive Order 14,251, *Exclusions from Federal Labor-Management Relations Programs* (the "Executive Order"), excludes EPA from coverage under chapter 71 of title 5, United States Code.  Exec. Order No. 14,251 § 2, 90 Fed. Reg. 14553, 14553 (Apr. 3, 2025).

3.      The President has determined that EPA has both national security and investigative work as primary functions.

1

a.    EPA has a primary mission with respect to national security to prevent, limit, mitigate, or contain chemical, oil, radiological, biological and/or natural or man-made disasters and provide environmental monitoring, assessment, and reporting in support of overall domestic incident management under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq*. and the Clean Water Act, 33 U.S.C. § 1321.

b.    EPA also functions as the Sector Risk Management Agency[1] for the U.S. water and wastewater critical infrastructure sector, and serves a primary national security function through its role in energy policy.  The Clean Air Act empowers EPA to regulate greenhouse gas emissions, including by regulating American use of fossil fuels as opposed to renewable energy sources.  *See West Virginia v. EPA*, 597 U.S. 697 (2022); Am*. Elec. Power Co. v. Connecticut*, 564 U.S. 410 (2011); *Massachusetts v. EPA*, 549 U.S. 497 (2007).  EPA policymaking regarding renewable energy sources has substantial effects on national security by promoting use of products, such as electric vehicle batteries, that could increase the United States's dependence on foreign adversaries like China for critical natural resources.  *See, e.g.,* "Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles," 89 Fed. Reg. 27,842 (Apr. 18, 2024).  EPA's role in energy policy also impacts national security through its effects on the nation's economic capacity.  For example, an EPA rule that has since been repealed would have

---

[1] Sector Risk Management Agencies coordinate and collaborate with the Department of Homeland Security and other relevant federal departments and agencies, and with critical infrastructure owners and operators, and carry out incident management responsibilities, among other national security duties.  *See* U.S. Dep't of Homeland Sec., Cybersecurity & Infrastructure Agency, *Sector Risk Management Agencies*, https://www.cisa.gov/topics/critical-infrastructure-security-and-resilience/critical-infrastructure-sectors/sector-risk-management-agencies.

shifted power generation from fossil fuels to more expensive renewable sources, undermining America's economy by passing higher energy costs through every stage of production. *See* "Carbon Pollution Emission Guidelines for Existing Stationary Sources: Electric Utility Generating Units," 80 Fed. Reg. 64,662 (Oct. 23, 2015).

> c.      The Federal Labor Relations Authority ("FLRA") itself has determined that EPA's work securing safe drinking water falls within the definition of "national security." *See United States EPA*, 70 F.L.R.A. 279, 283 (2017) (emphasis added) ("Any sabotage or interference with the availability of safe drinking water or breathing air may impact the *economic and productive strength of the country* as well as the general health and safety of U.S. citizens."); *Oak Ridge Operations, Oak Ridge, Tenn.*, 4 F.L.R.A. 644, 655–56 (1980) (emphasis added) (defining the term "national security" to include "those sensitive activities of the government that are directly related to the protection and preservation of the . . . *economic, and productive strength of the United States*, including the security of the Government in domestic and foreign affairs[.]").

> d.      EPA's efforts relating to fossil fuel use has a direct bearing on America's economic and productive capacity, and thus U.S. national security. EPA also conducts investigative work, namely criminal and civil investigations into environmental violations (*see, e.g.*, https://www.epa.gov/enforcement/environmental-enforcement-and-compliance-significant-cases), which directly impact the economy, society, and military of the United States (18 U.S.C. § 1956(e)).

4.      The President determined that applying the Federal Service Labor-Management Relations Statute to EPA is inconsistent with national security requirements and considerations. EPA's ability to carry out its national security and investigative functions (as described in

Paragraphs 3.a. through 3.d., *supra*) is hindered by the requirement to comply with the FSLMRS, particularly EPA's inability to quickly terminate employees with performance or conduct issues.

5.      EPA currently has a collective bargaining agreement ("NTEU CBA") with the National Treasury Employees Union ("NTEU"). The NTEU CBA, entitled, "Collective Bargaining Agreement between U.S. Environmental Protection Agency and The National Treasury Employees Union," was entered into on December 26, 2024. The Agreement covers four non-consolidated NTEU bargaining units, including the following groups of employees who are more precisely identified in the attached FLRA certifications: (1) Headquarters D.C.: Professional headquarters employees centered in Washington, D.C.; (2) Headquarters Cincinnati: Professional and non-professional headquarters employees centered in Cincinnati, Ohio and located in Edison, New Jersey; (3) Region VII: Professional employees of Region VII, EPA, Lenexa, Kansas; and (4) Region IX: Non-professional employees of Region IX, EPA, centered in San Francisco, California.

6.      The NTEU CBA includes numerous terms that materially restrict the power of EPA to govern and set policies for its own workforce.

       a.      Article 3, Section 4 requires Agency supervisors to delay meetings, including regular performance meetings, when employees raise questions about whether they are entitled to union representation.

       b.      Article 9, Section 14.C. requires performance improvement plans to last "not less than 60 calendar days," before EPA can propose to remove an underperforming employee. This is double the 30 days the President has determined is generally appropriate for these evaluations.

     c.     Numerous onerous and unnecessary requirements for notifications and explanations of normal Agency functions are put upon EPA management officials throughout the NTEU CBA beyond the normal grievance procedure, including:

     i.     Article 8., Section 3. requiring human resources officials to explain classification/job grading determinations with which employees disagree;

     ii.     Article 6., Section 5. requiring supervisors, upon request, to explain denials of union official time;

     iii.     Article 14., Section C. obligating supervisors to undertake a 5-part process soliciting volunteers prior to directing a reassignment;

     iv.     Article 14., Section 2.A. requiring supervisors, upon request, to explain why employees' requests for reassignment were denied; and

     v.     Article 17., Section 2.(d) requiring supervisors to explain in writing the denial of a work schedule and to meet with the employee upon request.

7.     The NTEU CBA generally interferes with EPA's ability to execute and implement the President's initiatives related to national security. For example, EPA generally cannot implement the President's government-wide rules and regulations that conflict with the NTEU CBA (absent a compelling need or without renegotiation and agreement with NTEU). 5 U.S.C. § 7117. Requiring EPA to abide by collective bargaining agreements is inconsistent with national security requirements and considerations. In order to carry out its national security and investigative functions (as described in Paragraphs 3.a. through 3.c., supra), EPA must be able to quickly terminate employees with performance or conduct issues. The Executive Order removes

5

these obstacles.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 23, 2025.

MICHAEL
MOLINA

Digitally signed by MICHAEL
MOLINA
Date: 2025.06.23 16:47:00 -04'00'

Michael Molina



# UNITED STATES OF AMERICA
## FEDERAL LABOR RELATIONS AUTHORITY

---

**U.S. ENVIRONMENTAL PROTECTION AGENCY**
**(Agency)**

**and**

**NATIONAL TREASURY EMPLOYEES UNION**
**(Petitioner/Labor Organization)**

**CASE NO. WA-RP-18-0055**

---

## CERTIFICATION FOR INCLUSION IN EXISTING UNIT

An election was conducted in the above matter under the supervision of the undersigned Regional Director of the Federal Labor Relations Authority, in accordance with the provisions of Chapter 71 of Title 5 of the U.S. Code. The purpose of the election was to determine whether all professional employees of the U.S. Environmental Protection Agency (Agency) Headquarters who are full-time teleworkers wish to be included in an existing professional unit represented by the National Treasury Employees Union, as certified in Case No. WA-RP-80038. A majority of valid ballots was cast for representation by the National Treasury Employees Union to be included into the existing professional unit. No objections to the election were filed pursuant to 5 C.F.R. § 2422.26.

**IT IS HEREBY CERTIFIED** that, pursuant to Chapter 71 of Title 5 of the U.S. Code, the named labor organization is the exclusive representative of employees in the following appropriate unit:

| | |
|---|---|
| Included: | All professional employees of the U.S. Environmental Protection Agency Headquarters. |
| Excluded: | Professional headquarters employees of Ada, Oklahoma, Ann Arbor, Michigan, Athens, Georgia, Cincinnati, Ohio, Corvallis, Oregon, Edison, New Jersey, Gross Isle, Michigan, Gulf Breeze, Florida, Las Vegas, Nevada, Montgomery, Alabama, Narragansett, Rhode Island, and Newport, Oregon; professional headquarters employees in the Raleigh, Durham, Chapel Hill area of the National Environmental Research Center, Triangle Park, North Carolina; all non-professional employees, management officials, supervisors, experts appointed under 5 C.F.R. § 304.101, Commission Corps Officers, employees on an IPA assignment, intermittent employees, temporary employees of 90 days or less, and employees described in 5 U.S.C. § 7112(b)(2), (3), (4), (6) and (7). |

Dated: October 31, 2019

Jessica S. Bartlett, Regional Director
Washington Regional Office

## CERTIFICATE OF SERVICE

I certify that I served the parties listed below a copy of the Certification for inclusion in Existing Unit in Case No. WA-RP-18-0055 in the manner indicated below:

**REGULAR MAIL & EMAIL**

Robert Coomber
United States EPA
1200 Pennsylvania Avenue, NW
WJC-N 6317 / MC: 3602A
Washington, DC 20460
Coomber.Robert@epa.gov

Sarah Riger, Assistant Counsel, NTEU
1750 H Street, NW
Washington, DC 20006
sarah.riger@NTEU.ORG

**HAND DELIVERY**

Office of the General Counsel
Federal Labor Relations Authority
1400 K Street, NW, Second Floor
Washington, DC  20424-0001

**EMAIL**

U.S. Office of Personnel Management
awr@opm.gov

DATED THIS 31st day of October 2019, at the Washington Regional Office of the Federal Labor Relations Authority, Office of the General Counsel.

Chandra Carr

**UNITED STATES OF AMERICA**

**BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY**

ENVIRONMENTAL PROTECTION AGENCY
REGION 9
     -Activity
-and-
NATIONAL FEDERATION OF FEDERAL
  EMPLOYEES, LOCAL 2080
       -Petitioner/ Labor Organization
-and-
NATIONAL TREASURY EMPLOYEES UNION
      -Labor Organization

CASE NO.  SF-RP-00008

## AMENDMENT OF CERTIFICATION

Pursuant to Section 2422.1 of the Regulations of the Federal Labor Relations Authority, a petition was filed seeking to amend the certification held by the National Federation of Federal Employees, Local 2080 since November 25, 1985 [Amendment of Certification, Case No. 9-AC-50006] as the exclusive representative of certain nonprofessional employees of the Environmental Protection Agency, Region 9, San Francisco, California by changing the designation of the exclusive representative for this bargaining unit, from the National Federation of Federal Employees, Local 2080 to the National Treasury Employees Union.

On August 31, 2000, I issued a Decision and Order finding that the certification may be amended, as requested.  No timely application for review was filed with the Authority.  Pursuant to the authority vested in me as Regional Director,

I ORDER that the certification granted to the National Federation of Federal Employees, Local 2080, as the exclusive representative of the following unit of nonprofessional employees:

Included:     All nonprofessional employees of Region IX, Environmental Protection Agency.

Excluded:    Professionals, supervisors, management officials, guards, employees engaged in Federal personnel work in other than a purely clerical capacity, Public Health Commissioned Officers, State assignees, employees detailed to EPA from other agencies, temporary employees of less than 90 days, Neighborhood Youth Corps Trainees, and College Work-Study students.

is amended by changing the designation of the exclusive representative from the National Federation of Federal Employees, Local 2080 to the National Treasury Employees Union.

Dated:  November 6, 2000

Gerald M. Cole
Gerald M. Cole, Regional Director
San Francisco Region

Attachment:   Service Sheet

FLRA Form 192
(Rev. 3/96)

FEDERAL LABOR RELATIONS AUTHORITY
CHICAGO REGION

———

U.S. ENVIRONMENTAL PROTECTION AGENCY
CINCINNATI, OHIO
(Activity)

AND

NATIONAL FEDERATION OF FEDERAL EMPLOYEES,
LOCAL 801
(Exclusive Representative/Petitioner)

———

CASE NO. CH-RP-80018

———

DECISION AND ORDER
ON
PETITION FOR AMENDMENT OF CERTIFICATION

———

## I. STATEMENT OF THE CASE

This case is before the undersigned Regional Director of the Federal Labor Relations Authority (the Authority) based on a petition filed by the National Federation of Federal Employees, Local 801 (Exclusive Representative/Petitioner) pursuant to section 7111 of the Federal Service Labor-Management Relations Statute (the Statute), 5 U.S.C. § 7111, and section 2422.5 of the Authority's Rules and Regulations (the Regulations), 5 C.F.R. § 2422.5. Pursuant to the provisions of section 7105 (e)(1) of the Statute, the Authority has delegated its powers in connection with the subject case to me in my role as Regional Director.

In its petition filed on March 5, 1998, the Petitioner seeks to amend an existing Certification of Representative granted to the National Federation of Federal Employees, Local 801, by changing its affiliation from National Federation of Federal Employees (NFFE) to the National Treasury Employees Union (NTEU). I have completed my investigation and conclude that the petition should be granted. My findings and conclusions follow.

## II. FINDINGS AND CONCLUSIONS

On January 5, 1998, in Case No. CH-RP-70042, the Petitioner was certified as the exclusive representative for a unit of employees currently described as follows:

> INCLUDED:    All professional and nonprofessional General Schedule employees of the Environmental Protection Agency, Cincinnati, Ohio.

> EXCLUDED:    Management officials, supervisors, intermittent employees, temporary employees of 90 days or less, Commissioned Corps employees, employees on Intergovernmental Personnel Act (IPA) assignment, co-op and student employees, employees of the following components: Office of Prevention, Pesticides and Toxic Substances; Office of Science Policy; Emergency Response Team; Office of Civil Rights; Office of the General Counsel; and employees described in 5 U.S.C. § 7112(b)(2), (3), (4), (6) and (7).

The Authority has held that to amend a certification or recognition to reflect a change in the name of the exclusive representative, the procedures set forth in Veterans Administration Hospital, Montrose, New York, 4 A/SLMR 858 (1974) review denied, 3 FLRA 259 (1975) (Montrose) must be followed. Naval Aviation Depot, Naval Air Station, Alameda, CA, 47 FLRA 242, 245 (1993) (NAD Alameda). The Montrose procedures are as follows:

> (1) the proposed change must be the subject of a special meeting to discuss the change with adequate advance notice to all members; (2) the meeting must take place at a time and place convenient to all members; (3) adequate time for discussion of the proposed change must be provided at the meeting; and (4) the proposed change must be voted on by the members present by secret ballot and the ballot must clearly indicate the proposed change. NAD Alameda, 47 FLRA at 244.

The investigation revealed that on February 5, 1998 notice of a special meeting was mailed by the Petitioner to the last known home address of all its members advising them that a special meeting to discuss and vote on changing the Exclusive Representative's affiliation to NTEU was scheduled for February 26, 1998.[1]

---

[1]The Petitioner also represents a separate unit of employees at the Environmental Protection Agency, National Risk Management Research Laboratory, Urban Watershed Management Branch, Edison, NJ. A separate petition was filed by

05/13/98    13:24    ☎312 886 5977          FLRA CHICAGO                                                      ☑004

The meeting was scheduled to commence at 1:00 p.m. in the Petitioner's office at the Activity where the approximately 23 members are duty-stationed. The Petitioner verified that each member received notification of the special meeting.

The meeting was convened as scheduled at the designated location. Twenty-one members arrived at the meeting between the hours of 1:00 p.m. and 2:00 p.m. to discuss and vote upon the proposed reaffiliation.[2]

Upon arrival at the meeting, each member was handed an unsealed envelope bearing his or her name and containing a ballot clearly setting forth the question to be voted on. Each member was asked to sign next to his or her name on a certified membership list to record attendance at the meeting. The member was then advised by the Petitioner that NTEU's Director of Field Operations, Washington, D.C., was available over the speaker phone to answer any questions the member might have.

When a member was ready to mark his or her ballot, he or she withdrew the ballot from the envelope, marked one of two boxes to indicate whether or not the member was in favor of the proposed reaffiliation, and deposited the ballot in the ballot box which was positioned on a table at one end of the room. In marking their ballots, each member ensured the secrecy of his or her vote through routine means such as turning away from others in the room.

At 3:00 p.m. the teleconference with the NTEU representative was terminated. The Petitioner telephoned two nonmember unit employees who had earlier agreed to come to the Petitioner's office to count the ballots. One of the employees opened the ballot box and emptied the ballots on the floor. Both employees participated in counting the ballots. The tally yielded a near unanimous vote to reaffiliate with NTEU.

Based on the foregoing, I find that the change in the Exclusive Representative's affiliation was accomplished in a manner consistent with the Montrose requirements.

──────────────────────────

the Petitioner with the Boston Region of the Authority seeking to amend the certification of representative covering that unit of employees to reflect an affiliation change from NFFE to NTEU (BN-RP-80019). A Decision and Order granting that petition was issued by the Boston Region on May 6, 1998.

[2]One member, unable to attend the meeting, voted by absentee ballot prior to the meeting. The ballot was marked, placed in a sealed envelope and given to the Petitioner who deposited it in the specially prepared ballot box. At the time of the tally of ballots, this member's ballot was removed from the sealed envelope and co-mingled with the other ballots, assuring the secrecy of this member's vote. A second member informed the Petitioner he would not be attending the meeting.

3

The investigation revealed that adequate advance notice of a special meeting to discuss and vote on the proposed affiliation change was provided to all of the Petitioner's members. The special meeting was conducted as scheduled at a time and in a place convenient to all members. The record further establishes that adequate time was provided for members to discuss the proposed change and to vote on the change by secret ballot. Finally, the evidence shows that the ballot unequivocally indicated the choices inherent in the proposed change, and that an overwhelming majority of the unit members voted for reaffiliation with NTEU.

Any change in affiliation of a labor organization must be supported by evidence of substantial representational continuity between the union existing before and after the change. U.S. Department of the Army, Rock Island Arsenal, Rock Island, IL, 46 FLRA 76, 84-85 (1992). The evidence in this regard reflects that the Petitioner's elected officers will remain in their positions and continue to engage in grievance handling and contract negotiations on behalf of the bargaining unit; the Petitioner's existing collective bargaining agreement will govern the bargaining relationship between the Activity and the NTEU; the Petitioner's local constitution will be replaced by NTEU's national constitution and; NTEU's local/national dues structure will replace the Petitioner's local/national dues structure.

Accordingly, in view of the foregoing findings, I conclude that the certification may be amended to reflect the petitioned-for change from National Federation of Federal Employees, Local 801 to National Treasury Employees Union.

## III. ORDER

Having found that the requisite procedures for effecting a change in affiliation were satisfied, and the parties having waived a hearing in this matter and waived their respective rights to file an application for review pursuant to sections 2422.30 and 2422.31 of the Authority's Rules and Regulations, pursuant to the authority vested in the undersigned,

IT IS ORDERED that the bargaining unit for which the National Federation of Federal Employees, Local 801 was certified as the bargaining representative on January 5, 1998 in Case No. CH-RP-70042 be amended to reflect the change in affiliation to the National Treasury Employees Union. The unit is described as follows:

INCLUDED:    All professional and nonprofessional General Schedule employees of the Environmental Protection Agency, Cincinnati, Ohio.

4

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
CHICAGO REGION



U.S. ENVIRONMENTAL PROTECTION AGENCY
CINCINNATI, OHIO
     (Activity)

and

NATIONAL FEDERATION OF FEDERAL EMPLOYEES,
LOCAL 801
    (Exclusive Representative/Petitioner)

CASE NO. CH-RP-80018

## AMENDMENT OF CERTIFICATION

Pursuant to Sections 2422.1(b) and 2422.2(c) of the Regulations of the Federal Labor Relations Authority, a petition was filed seeking to amend the certification granted to the National Federation of Federal Employees, Local 801 (Union), on January 5, 1998, in Case No. CH-RP-70042, as the exclusive representative of certain employees of the U.S. Environmental Protection Agency, Cincinnati, Ohio (Activity), to reflect a change in the designation of the exclusive representative for this existing bargaining unit from National Federation of Federal Employees, Local 801 to the National Treasury Employees Union.

On May 13, 1998, I issued a Decision and Order on the petition finding that the certification may be amended as requested.

The parties waived their right to file an Application for Review. Pursuant to the authority vested in me as Regional Director,

I ORDER that the certification granted to the National Federation of Federal Employees, Local 801, on January 5, 1998 in Case No. CH-RP-70042, as the exclusive representative of the following unit of employees:

    **INCLUDED:**   **All professional and nonprofessional General Schedule employees of the U.S. Environmental Protection Agency, Cincinnati, Ohio.**

    **EXCLUDED:**   **Management officials, supervisors, intermittent employees, temporary employees of 90 days or less, Commissioned Corps employees, employees on Intergovernmental Personnel Act (IPA) assignment, co-op and student employees, employees of the following components: Office of Prevention, Pesticides and Toxic Substances; Office of Science Policy; Emergency Response Team; Office of Civil Rights; Office of the General Counsel; and employees described in 5 U.S.C. §7112(b)(2), (3), (4), (6) and (7).**

be amended by changing the designation of the exclusive representative from the National Federation of Federal Employees, Local 801 to the National Treasury Employees Union.

05/13/98   13:26   ☎312 886 5977        FLRA CHICAGO                               ☒007

WILLIAM E. WASHINGTON
Regional Director
Chicago Region
Federal Labor Relations Authority
55 W. Monroe, Suite 1150
Chicago, IL 60603-9729

dated: May 13, 1998

**FEDERAL LABOR RELATIONS AUTHORITY**
**CHICAGO REGION**

———

U.S. Environmental Protection Agency
Cincinnati, Ohio
(Agency/Petitioner)

and

National Treasury Employees Union
(Union)

———————

**CH-RP-23-0013**

———————

**DECISION AND ORDER CLARIFYING UNIT**

———————

**I.      Statement of the Case**

The Environmental Protection Agency, Cincinnati, Ohio (Agency) filed a petition to clarify the bargaining unit status of employees who are organizationally assigned to an Environmental Protection Agency (EPA) office located in greater Cincinnati, Ohio but who work remotely at locations outside of greater Cincinnati. The National Treasury Employees Union (Union) contends these employees are included in its bargaining unit as its certification neither excludes employees working remotely nor requires that an employee's duty station be physically located in the greater Cincinnati area.

The Region investigated this matter and I have fully considered the documents submitted by the parties and their signed Stipulation of Facts. For the reasons discussed below, I find that the employees who are organizationally assigned to an EPA office within the greater Cincinnati, Ohio area but who work remotely at a location outside of greater Cincinnati are in the bargaining unit represented by the Union.

**II.      Findings**

A.  The Bargaining Unit

The Union represents the following bargaining unit that was certified on May 13, 1998, in Case No. CH-RP-80018:

| Included: | All professional and nonprofessional General Schedule employees of the U.S. Environmental Protection Agency, Cincinnati, Ohio. |
|---|---|
| Excluded: | Management officials, supervisors, intermittent employees, temporary employees of 90 days or less, Commissioned Corps employees, employees |

on Intergovernmental Personnel Act (IPA) assignment, co-op and student employees, employees of the following components: Office of Prevention, Pesticides and Toxic Substances; Office of Science Policy; Emergency Response Team; Office of Civil Rights; Office of the General Counsel; and employees described in 5 U.S.C. §7112 (b)(2), (3), (4), (6) and (7).

The parties are currently subject to an October 8, 2015, collective bargaining agreement between the U.S. Environmental Protection Agency and the National Treasury Employees Union.

B.  The EPA

The EPA is an independent executive agency of the federal government tasked with environmental protection. It conducts environmental assessment, research, and education; it maintains and enforces national standards under a variety of environmental laws in consultation with state, tribal and local governments. Its mission is to protect human health and the environment. The EPA develops and enforces environmental law by writing regulations and setting national standards; provides grants to state environmental programs, non-profits, educational institutions and others; tasks its laboratories with identifying and solving environmental problems; partners with business, non-profit organizations and state and local governments; and provides education and publishing information. The Administrator is the head of the EPA and oversees its ten regions and 27 laboratories.

Upon its creation in 1970, the EPA inherited multiple sites, including 40 laboratories located across 26 states. Among the EPA's early initiatives was the creation of an environmental research center in Cincinnati, Ohio, which went on to be named one of the EPA's three national environmental research centers. Today, the EPA's presence in Cincinnati includes multiple teams, offices, divisions and centers, the largest of which is the Andrew W. Breidenbach Environmental Research Center.

C.  EPA's Remote Work Policy

The EPA has a March 8, 2022, remote work policy covering its employees, supervisors, and managers, among others. The policy defines remote work, also known as full-time telework, as when an employee works within or outside the local commuting area of an agency worksite and is not expected to report to the agency worksite on a regular and recurring basis. An employee's remote work location is an approved work location other than the agency worksite. It is generally an employee's residence. The remote work location, which may be within or outside of the local commuting area of the regular office or worksite, constitutes the remote worker's official worksite (aka official duty station), and this address is documented as such in the employee's personnel file. When the EPA documents a change to remote work in an employee's personnel file, it does not change the employee's job title or organizational assignment. The remote work policy also provides that in addition to an official worksite, remote workers have an assigned agency worksite, which is the office, program, region, lab, HR Shared Service Center from which the employee receives direction or will report if the supervisor or manager recalls the employee or terminates the remote work agreement.

D.  Remote Worker Working Conditions

2

When employees transition to remote work, they continue to work under the same job titles and within their same organizations performing the same duties and supporting the same communities. Likewise, they continue to work under the same chains of command and with the same employees within their respective organizations, using the same virtual platforms to communicate. They continue to be included in e-mail communications directed to their organizations and continue to have access to their organizations' intranet sites. Similar to their on-site coworkers, remote workers use agency meeting and conferencing tools or government-issued mobile phones or calling cards to conduct official government business with customers and contacts in other locations. Remote workers use office supplies provided by the EPA.

Although remote workers are offsite, they continue to use the same technology and IT support to complete work and are subject to the same security directives and record management requirements as those employees who are physically located in the greater Cincinnati area. Likewise, the EPA may provide equipment to its remote workers equivalent to that provided to employees at the agency worksite, and the EPA is responsible for service and maintenance of that equipment.

Remote workers continue to work the same schedules as they did at an EPA worksite, including compressed or flexible schedules, and the remote work policy requires that supervisors treat them identically for the purposes of monitoring and assessing job performance. The same personnel policies and practices apply to all employees. For example, the procedures for requesting leave are the same for employees participating in remote work and employees working onsite. Likewise, remote workers have the same promotion opportunities as other employees within their organization and retain the same bumping rights in reductions in force. The same human resources office administers the personnel policies and practices for both the remote and onsite workers. It also handles labor relations matters, such as grievances, for both groups of employees.

## III.    Analysis and Conclusion

The Authority has long held that "[n]ew employees are automatically included in an existing bargaining unit where their positions fall within the express terms of a bargaining certificate and where their inclusion does not render the bargaining unit inappropriate." *Dep't of the Army Headquarters, Fort Dix, Fort Dix, N.J.*, 53 FLRA 287, 294 (1997) (*Fort Dix*). *Fort Dix* applies not only to newly-hired employees, but also to existing and relocated employees "to ensure effective employee representation consistent with the terms of an existing unit certification." *NFFE, FD-1, IAMAW, AFL-CIO*, 67 FLRA 643, 644-45 (2014); *SSA, Office of Disability Adjudication & Rev., Falls Church, Va.*, 62 FLRA 513, 514-15 (2008).

The bargaining unit at issue here includes "[a]ll professional and nonprofessional General Schedule employees of the U.S. Environmental Protection Agency, Cincinnati, Ohio." As the remote workers continue to be employees *of* the same organizations to which they were assigned before they began working remotely, they continue to be employees of the U.S. Environmental Protection Agency, Cincinnati, Ohio. *See SSA*, 68 FLRA 710, 711 (2015) (affirming regional director's determination that the word "of" denotes an organizational assignment). *Cf. SSA, Off. of Disability Adjudication & Rev., Dallas Region, Dallas, Tex.*, 66 FLRA 1, 2-3 (2011) (finding employees organizationally assigned to the regional office were included within the unit even when not physically working in the regional office); *NLRB, Wash., D.C.*, 69 FLRA 295, 296-98

(2016) (affirming inclusion of remote employees in unit based on organizational assignment). Thus, the remote workers fall within the express terms of the bargaining unit.

Additionally, the continued inclusion of remote workers in the bargaining unit does not render the unit inappropriate. To determine whether a petitioned-for unit is appropriate, the Authority considers whether the unit would: (1) ensure a clear and identifiable community of interest among the employees in the unit; (2) promote effective dealings with the agency; and (3) promote efficiency of the operations of the agency. 5 U.S.C. § 7112(a); *see also U.S. Dep't of the Navy, Fleet & Indus. Supply Ctr., Norfolk, Va.*, 52 FLRA 950, 959 (1997); *U.S. Dep't of the Air Force, Lackland Air Force Base, San Antonio, Tex.*, 59 FLRA 739, 741 (2004) (*Lackland AFB*). Determinations as to each of the three criteria are made on a case-by-case basis. *Lackland AFB*, 59 FLRA at 741. The Statute does not require that the unit be the "most appropriate" or the "only appropriate" unit; the Statute only requires that the unit be *an* appropriate unit. *Id.*

Even though the remote workers are physically separate from their respective offices, they continue to share a community of interest with the other bargaining unit employees in the greater Cincinnati area. To that end, the remote workers continue to work in the same positions, serving the same mission and communities and under the same chains of command. They continue to collaborate with on-site and/or teleworking coworkers as they always have. Remote and onsite employees are subject to the same personnel policies, practices and procedures and utilize the same human resources services. And the weight of the evidence supports a finding that continuing to include them in the bargaining unit will promote effective dealings with the EPA and the efficiency of the EPA's operations.

## IV.    Order

The employees who are organizationally assigned to an EPA office in the greater Cincinnati, Ohio area but who work remotely at locations outside of greater Cincinnati area are included in the bargaining unit represented by the National Treasury Employees Union as certified on May 13, 1998, in Case No. CH-RP-80018.

## V.    Right to File an Application for Review

Under section 7105(f) of the Statute and section 2422.31(a) of the Authority's Regulations, a party may seek review of this Decision by filing an application for review with the Authority within sixty (60) days after the date of this Decision. The contents of an application for review and the Authority's grounds for review are set forth in section 2422.31(b) and (c) of the Regulations. The filing and service requirements for an application for review are addressed in Part 2429 of the Authority's Regulations.

An application for review must be filed by **October 16, 2023**, and addressed to the Chief, Office of Case Intake and Publication, Federal Labor Relations Authority, Docket Room, Suite 201, 1400 K Street, NW, Washington, DC 20424–0001. An application for review may also be filed electronically through the Agency's website. See Section 2429.24(f) of the Authority's Regulations. To file electronically, go to www.flra.gov, click on eFiling, and follow the detailed instructions.

Greg Weddle, Regional Director
Federal Labor Relations Authority
Chicago Regional Office
224 S. Michigan Ave, Suite 445
Chicago, Illinois 60604-2505

Dated:  August 16 2023

**CERTIFICATE OF SERVICE**

I certify that a copy of the Decision and Order in Case No. CH-RP-23-0013 was sent by first-class mail to the following individuals:

Harold Peetz, Labor and Employee Relations Specialist
OARM-Cincinnati Human Resources Shared Service Center
U.S. Environmental Protection Agency
26 W. Martin Luther King Drive
Cincinnati, OH  45268

William Igoe, Assistant Counsel
National Treasury Employees Union
33 North LaSalle Street, Suite 1700
Chicago, IL 60602

Charlotte A. Dye, Deputy General Counsel
Federal Labor Relations Authority
1400 K Street, NW, 2nd Floor
Washington, DC 20424-0001

Chief, Office of Case Intake and Publication
Federal Labor Relations Authority
Docket Room, Suite 200
1400 K Street, NW.
Washington, D.C. 20424


_____
Ylanda Wilson


Dated: August 16, 2023

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY

U.S. Environmental Protection Agency
National Risk Management Research Laboratory
Urban Watershed Management Branch
Edison, New Jersey

(Activity)

-AND-

National Federation of Federal Employees,
Local 801

(Exclusive Representative/Petitioner)

Case No. BN-RP-80019

## AMENDMENT OF CERTIFICATION

Pursuant to section 2422.1 of the Rules and Regulations of the Federal Labor Relations Authority, a petition was filed seeking to amend the certification granted to the National Federation of Federal Employees, Local 801 on October 31, 1996, in Case No. CH-RP-60035, as the exclusive representative of certain employees of the U.S. Environmental Protection Agency, National Risk Management Research Laboratory, Urban Watershed Management Branch, Edison, New Jersey. The petition sought to change the designation of the exclusive representative for this existing bargaining unit from the National Federation of Federal Employees, Local 801 to the National Treasury Employees Union.

On, May 6, 1998, I issued a Decision and Order on the Petition finding that the certification may be amended as requested.

The parties waived their right to file an Application for Review. Pursuant to the authority vested in me as Regional Director,

I ORDER that the certification granted to the National Federation of Federal Employees, Local 801 on October 31, 1996, in Case No. CH-RP-60035, as the exclusive representative of the following unit of employees:

INCLUDED:       All professional and nonprofessional General Schedule
                employees of the Environmental Protection Agency,
                National Risk Management Research Laboratory, Urban
                Watershed Management Branch located in Edison,
                New Jersey.

EXCLUDED:       Members of the U.S. Commission Corps; employees on an
                Intergovernmental Personnel Act (IPA) assignment; co-op
                and student employees; management officials; supervisors;
                and employees described in 5 U.S.C. 7112(b)(2), (3), (4), (6)
                and (7).


be amended by changing the designation of the exclusive representative <u>from</u> the
National Federation of Federal Employees, Local 801 <u>to</u> the National Treasury
Employees Union.


*Edward S. Davidson*

Edward S. Davidson
Regional Director
Boston Region
Federal Labor Relations Authority
99 Summer Street, Suite 1500
Boston, MA 02110-1200


Dated:  May 6, 1998

Attachment:  Service Sheet

## CERTIFICATE OF SERVICE

I certify that I have served the parties listed below a copy of the **DECISION AND ORDER ON PETITION** and **AMENDMENT OF CERTIFICATION** in Case No. BN-RP-80019:

### CERTIFIED MAIL

Mr. James N. Dryer
National Treasury Employees Union
26 W. Martin Luther King Drive
Cincinnati, OH 45268

Ms. Sandra K. Bowman, Director
Human Resources Division
U.S. Environmental Protection Agency
26 W. Martin Luther King Drive
Cincinnati, OH 45268

### REGULAR MAIL

Ms. Nancy A. Speight
Director, Program Development
Office of the General Counsel
Federal Labor Relations Authority
607 14th Street, NW, Suite 210
Washington, D.C. 20424-0001

Notice Processing Unit
Federal Mediation and Conciliation
Service
2100 K. Street, NW
Washington, D.C. 20427

Mr. Robert Tobias, President
National Treasury Employees Union
901 E Street, N.W., Suite 600
Washington, D.C. 20004

Ms. Joyce James, Secretary-Treasurer
National Federation of Federal
Employees
1016 16th Street, N.W.
Washington, D.C. 20026

Dated: _5-6-98_

_Pamela Rebello_
Secretary

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
DENVER REGION

ENVIRONMENTAL PROTECTION AGENCY,
REGION VII,
KANSAS CITY, KANSAS
    Activity
and

NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, FEDERAL DISTRICT 1,          Case No. DE-RP-01-0015
IAMAW, AFL-CIO
    Labor Organization/Petitioner
and

NATIONAL TREASURY EMPLOYEES
UNION (NTEU)
    Labor Organization/Intervenor

## CERTIFICATION OF REPRESENTATIVE

An election having been conducted in the above matter under the supervision of the undersigned Regional Director of the Federal Labor Relations Authority, in accordance with the provisions of the Federal Service Labor-Management Relations Statute, and in accordance with the regulations of the Authority; and it appearing that a majority of the valid ballots has been cast for a representative for the purpose of exclusive recognition;

Pursuant to authority vested in the undersigned,

**IT IS HEREBY CERTIFIED** that the

        National Treasury Employees Union (NTEU)

has been designated and selected by a majority of the employees of the above-named Activity or Agency, in the unit described below, as their representative for purposes of exclusive recognition, and pursuant to Chapter 71 of Title 5 of the U.S.C., the said organization is the exclusive representative of all employees in such unit.

UNIT: All professional employees of Region VII, Environmental Protection Agency, Kansas City, Kansas, excluding all nonprofessional employees; Commissioned Officers; management officials; supervisors; and employees described in 5 USC 7112(b)(2), (3), (4), (6), and (7).

        FEDERAL LABOR RELATIONS AUTHORITY

        Marjorie K. Thompson
        Regional Director - Denver Region

Dated: June 21, 2001
Attachment: Certification of Service

SERVICE SHEET
CASE NO. DE-RP-01-0015

I certify that on June 21, 2001, I served the parties listed below a copy of the attached
CERTIFICATION OF REPRESENTATIVE.

Richard Devoe
Regional Labor Relations Specialist
Environmental Protection Agency, Region VII
PLMG/HROD
901 N. 5th Street
Kansas City, KS 66101

John M. Paolino
National Federation of Federal Employees,
Federal District 1, IAMAW, AFL-CIO
1016 16th Street, NW
Washington, DC 20036

Elizabeth Gaines
National Field Organizer
National Treasury Employees Union
901 E Street, NW, Suite 100
Washington, DC 20004-2037

David Feder
Acting General Counsel
Office of the General Counsel
Federal Labor Relations Authority
607 14th Street, NW, 2nd Floor
Washington, DC 20424-0001



**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY**
**DENVER REGION**

U.S. ENVIRONMENTAL PROTECTION
AGENCY, REGION 7, OFFICE OF
REGIONAL COUNSEL, KANSAS CITY,
KANSAS
    Activity

And

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES (AFGE),
AFL-CIO
    Labor Organization

**Case No. DE-RP-09-0017**

### CERTIFICATION OF INCLUSION IN EXISTING UNIT

An election having been conducted in the above matter under the supervision of the undersigned Regional Director of the Federal Labor Relations Authority, in accordance with the provisions of Chapter 71, of Title 5 of the U.S.C., and in accordance with the Regulations of the Federal Labor Relations Authority; among the employees of the Activity in the following categories:

**INCLUDED**:  All professional employees of the Office of Regional Counsel, Environmental Protection Agency, Region 7, located in Kansas City, Kansas.

**EXCLUDED**:  All nonprofessional employees; supervisors; management officials; temporary employees; intermittent employees; and employees described in 5 USC 7112(b)(2), (3), (4), (6), and (7).

and it appearing that a majority of the valid ballots have been cast for inclusion in the existing consolidated unit of U.S. Environmental Protection Agency professional employees currently represented by the American Federation of Government Employees, AFL-CIO, as most recently certified on January 8, 1980, in Case No. 22-09130 (UC)-002,

Pursuant to authority vested in the undersigned,

**IT IS HEREBY CERTIFIED** that the above-described employees are included in the existing nationwide consolidated unit of U.S. Environmental Protection Agency professional employees currently represented by the American Federation of Government Employees, AFL-CIO, as most recently certified on January 8, 1980, in Case No. 22-09130 (UC)-002.

**FEDERAL LABOR RELATIONS AUTHORITY**

Matthew L. Jarvinen
Regional Director, Denver Region

Dated: July 17, 2009
Attachment: Certificate of Service

**SERVICE SHEET**
**CASE NO. DE-RP-07-0018**

I certify that on July 17, 2009, I served the parties listed below a copy of the attached
<u>CERTIFICATION OF INCLUSION IN EXISTING UNIT</u>:

Steven Roy
AFGE Council 238
U.S. Environmental Protection Agency
1200 6th Ave., Suite 900
Seattle, WA  98101

Melissa Blohm
Director
Human Resources and Organizational
   Development
U.S. Environmental Protection Agency
Region 7
901 N. 5th St.
Kansas City, KS  6610

Sharon R. Pinnock
Director
Membership and Organization
American Federation of Government
 Employees, AFL-CIO
80 F Street
Washington, DC 20001

Office of the General Counsel
Federal Labor Relations Authority
1400 K Street, NW
Washington, DC  20424-0001

*E. Benford*