# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:25-cv-935-PLF<br>)<br>) |
| v. | ) Judge Paul L. Friedman<br>) |
| DONALD J. TRUMP, *et al.*, | )<br>) |
| Defendants. | )<br>)<br>) |

## DECLARATION OF MARK STEPHENS

I, Mark Stephens, declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Managing Director for the Federal Communications Commission ("FCC"), and I have served in this role since July 10, 2016. In this role, I serve as the FCC's chief operating and executive official with duties and responsibilities including managing the FCC's budget and financial program; human resources; contracts and purchasing; communications and computer services; physical space; security; the FCC meeting schedule; and distribution of official FCC documents. Based on personal knowledge and information provided to me in the course of my official duties, I provide this declaration in support of Defendants' opposition to Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment in the above-captioned case.

2. Section 2 of Executive Order 14,251, *Exclusions from Federal Labor-Management Relations Programs* (the "Executive Order"), excludes the FCC from coverage under chapter 71 of title 5, United States Code. Exec. Order No. 14,251 § 2, 90 Fed. Reg. 14553, 14554 (Apr. 3, 2025).

1

3. Congress created the FCC "for the purpose of the national defense[.]" 47 U.S.C. § 151. The FCC secures the Nation by regulating and protecting its communications networks—crucial infrastructure for national defense and America's economic productivity. The primacy of national security in the agency's mission and operations is reflected in its Council on National Security, which "leverage[s] the full range of the Commission's regulatory, investigatory, and enforcement authorities to protect America[] and counter foreign adversaries, particularly the threats posed by the People's Republic of China (PRC) and Chinese Communist Party (CCP)." FCC, *FCC Council on National Security*, https://www.fcc.gov/fcc-council-national-security. More specifically, the FCC has revoked certain telecommunications carriers' authorizations to provide domestic and international service based on national security grounds. *See generally* 47 U.S.C. § 214. It also administers a congressionally mandated "covered list" that bars FCC subsidies for communications equipment that poses an unacceptable risk to national security. *See* 47 U.S.C. §§ 1601-02; FCC, *List of Equipment and Services Covered By Section 2 of The Secure Networks Act*, https://www.fcc.gov/supplychain/coveredlist.

4. The Federal Service Labor-Management Relations Statute ("FSLMRS") allows federal employees to organize and bargain collectively, and it requires federal agencies to negotiate with unions over certain matters. *See* 47 U.S.C. §§ 7102(2), 7106, 7114. Among other things, the FSLMRS creates a process for resolving labor disputes. *See, e.g.*, *id.* §§ 7116, 7118. This process can be lengthy and burdensome. By requiring the FCC to follow requirements that can be lengthy and burdensome, the FSLMRS limits the FCC's discretion and prevents the FCC from swiftly taking actions to govern its employees and to set workforce policies.

5. The FCC has a collective bargaining agreement with the National Treasury Employees Union ("NTEU"), called the Basic Negotiated Agreement ("BNA"). The BNA became

effective on March 17, 2023, and has a seven-year duration, which was imposed by the Federal Services Impasses Panel at the request of the FCC. *See* Federal Communications Commission and National Treasury Employees Union, Chapter 209, 20 FSIP 054 (Sept. 28, 2020).

6. The BNA includes numerous terms that materially restrict the power of the FCC to govern and set policies for its own workforce:

   a. Article 12 of the BNA requires the FCC to give first consideration to bargaining unit employees before considering external candidates when filling bargaining unit positions and establishes a cumbersome evaluation process for these positions.

   b. Article 35 of the BNA establishes an appeals process that applies when the FCC issues either an oral admonishment confirmed in writing or a written reprimand, and it limits the length of time that an oral admonishment confirmed in writing or a written reprimand may remain in an employee's official personnel folder. Article 35 also requires the FCC to follow a detailed and onerous process before the FCC may suspend an employee for 14 days or less, and it allows the employee to be represented by an attorney or other representative.

   c. Article 36 of the BNA requires the FCC to follow a separate process that is both lengthy and burdensome before it may impose a more significant "adverse action" against an employee.

   d. Article 37 of the BNA requires the FCC to follow specific timelines and burdensome processes before taking certain actions against underperforming employees.

   e. Article 9 of the BNA requires the FCC to give advance notice and to follow mid-term bargaining procedures before making certain changes to the physical space in

which an employee works.

7. As a general matter, the BNA interferes with the FCC's ability to execute and implement the President's initiatives related to national security. For example, the FCC cannot implement government-wide rules and regulations from the President that conflict with the BNA (without renegotiation and agreement with the union). The agency likewise cannot always immediately consider the most capable employees (because of Article 12); cannot as quickly take certain disciplinary or adverse actions against employees (because of Articles 35, 36, and 37), even if those actions are necessary to meet the FCC's present needs; and cannot always immediately make physical changes to employee office space (because of Article 9), even if doing so is necessary to maintaining an effective and efficient workplace. The Executive Order removes these obstacles.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 23, 2025.

MARK STEPHENS
Digitally signed by MARK STEPHENS
Date: 2025.06.23 14:12:25 -04'00'

_____
Mark Stephens