# EXHIBIT 9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION,<br><br>    *Plaintiff*;<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    *Defendants*. | Case No. 1:25-cv-935-PLF<br><br>Judge Paul L. Friedman |

### DECLARATION OF STEPHANIE M. HOLMES

I, Stephanie M. Holmes, declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Acting Chief Human Capital Officer for the Department of the Interior ("Department"), headquartered in Washington, D.C. I have served in this role since February 24, 2025. I make this declaration based on my own personal knowledge, on information contained in the records of the Department, and on information provided to me in my official capacity.

2. In my current role, I am responsible for personnel management, including oversight of the Department's Office of Human Capital ("OHC"). OHC oversees the Department's Labor Management Relations Program.

3. Section 2 of Executive Order 14,251, *Exclusions from Federal Labor-Management Relations Programs* (the "Executive Order") excludes the Bureau of Land Management ("BLM") and certain other agencies or subdivisions of the Department from coverage under chapter 71 of title 5, United States Code. Exec. Order No. 14,251 § 2, 90 Fed. Reg. 14553, 14554 (Apr. 3, 2025). BLM is the only excluded agency or subdivision of the Department relevant to the above-captioned case through the Complaint's naming as a Defendant only the Acting Director of BLM.

4. The Department of the Interior protects and manages the Nation's natural resources and provides scientific and other information about those resources through multiple bureaus and offices, including BLM. Domestic energy production is a critical national security priority, and BLM oversees energy production on America's hundreds of millions of acres of public lands as one of its principal responsibilities. BLM's public lands management also plays a substantial role in funding the Federal Government's operations through mineral development, the Nation's second-largest revenue source after tax revenue.

5. A primary function of the Department of the Interior, specifically BLM, is to protect the nation's natural energy and mineral resources from internal subversion and foreign aggression by helping the nation become more energy independent and ensure safe energy production and mineral extraction and development from external and internal threats. To successfully perform this function, the Department and BLM must be able to react nimbly and quickly to adjust conditions of employment to meet this goal. The FSLMRS requirements do not allow for quick changes. Instead, the cumbersome regulatory framework of the FSLMRS inhibits the Department's ability to meet this primary function safely and effectively to protect national security interests.

6. BLM has one active collective bargaining agreement ("CBA") with NTEU between the BLM Northwest Oregon District and NTEU Chapter 342. That agreement was executed on February 20, 2025, and approved on Agency Head Review on March 16, 2025. The CBA covers all professional and non-professional employees of the Northwest Oregon District, BLM, excluding all management officials, supervisors, and employees described in 5 U.S.C. § 7112(b)(2), (3), (4), (6) and (7).

7. NTEU was approved as the exclusive representative by the Federal Labor Relations

Authority to represent the BLM's New Mexico State Office employees and BLM Headquarters ("BLM HQ") employees. However, neither office has an approved CBA.[1] Currently, both have Memorandum of Understanding ("MOU") with their respective NTEU local chapter regarding ground rules covering CBA negotiations. Within the MOU's ground rules for CBA negotiations between BLM HQ and NTEU Chapter 341, the parties agreed to use the Department's Administrative Grievance Procedures while they negotiated the CBA. BLM New Mexico State Office has MOUs covering telework and remote work, and an interim agreement covering grievance procedures, notifications of changes to conditions of employment, and union dues.

8. The CBA and MOUs include numerous terms that materially restrict the power of BLM to govern and set policies for its own workforce:

   a. Prior to making any changes to conditions of employment, BLM is required to provide 14-15 days advanced notice to the union (depending on the agreement). The union is then allowed another 14-15 days to present proposals to the agency prior to the parties' bargaining over the impact and implementation of the proposed change. If the parties are unable to reach agreement, the parties may seek the services of the Federal Mediation and Conciliation Services ("FMCS") and/or the Federal Service Impasse Panel ("FSIP"). Both the FMCS and FSIP have experienced recent staffing changes that may lead to additional delays.

   b. The unions are allowed to file grievances and arbitrations on matters specifically included in the CBAs and MOUs (e.g., employee discipline or contract violations).

---

[1] On December 18, 2024, BLM HQ and NTEU Chapter 341 executed a CBA and submitted it for agency head review. The Department disapproved the agreement on January 15, 2025, pursuant to 5 U.S.C. §7114(c). NTEU Chapter 341 did not file a negotiability appeal with the Federal Labor Relations Authority following the disapproval. As a result, that agreement is not in effect.

3

> If the matter is not resolved satisfactorily, the parties may elect FMCS services or file with the FLRA an exception to the arbitrator's award. *See* 5 U.S.C. § 7122.

9. As a general matter, the CBA and MOUs interfere with BLM's ability to execute and implement the President's initiatives related to national security. For example, BLM cannot implement government-wide rules and regulations from the President that conflict with the CBA (without renegotiation and agreement with the unions), such as priorities to require increased physical presence in the workplace, or initiatives to increase oil and gas development on federal lands or increased coal production on lands managed by BLM. Similarly, if DOI were to change the conditions of employment of some employees for certain initiatives, such as increased field activity in regulating oil and gas drilling on federal lands, DOI would be required to provide advance notice of the change and engage in impact and implementation bargaining. The Executive Order removes these obstacles.

10. Plaintiff asserts that a BLM New Mexico employee stated in an April 2, 2025 email that CBA negotiations previously scheduled for April 3 would be postponed. *See* Pl.'s Stmt. of Material Facts ¶ 194, ECF No. 43-2. While BLM New Mexico postponed union negotiations with NTEU Chapter 340 on April 1–3, 2025 to await further direction regarding the Executive Order, those negotiations were later held on May 14–15.

11. Plaintiff asserts that a BLM employee stated in an April 8, 2025 email that BLM "would not bargain" with NTEU over the agency's offering of a deferred resignation program. *See* Pl.'s Stmt. of Material Facts ¶ 195. BLM has later changed communications to such emails to indicate that BLM would hold any grievances or requests for bargaining in abeyance to the extent that they fall under the purview of Executive Order 1,4251.

12. Plaintiff asserts that a BLM New Mexico employee stated in an April 11, 2025

4

email that a Labor Management Relations Committee meeting previously scheduled for April 14 would be postponed. *See* Pl.'s Stmt. of Material Facts ¶ 196. While BLM New Mexico postponed the meeting to determine which employees were a part of the bargaining unit, the meeting was later held on May 12, 2025.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 23, 2025.

STEPHANIE HOLMES
Digitally signed by STEPHANIE HOLMES
Date: 2025.06.23 19:53:29 -04'00'

_____
Stephanie M. Holmes

5