# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY EMPLOYEES UNION,

*Plaintiff,*

v.

DONALD J. TRUMP, *et al.*,

*Defendants.*

Case No. 1:25-cv-00935-PLF

Judge Paul L. Friedman

## DEFENDANTS' RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Rule 7(h)(1) of the Local Rules of the United States District Court for the District of Columbia, Defendants, through counsel, respectfully submit the following response to Plaintiff's Statement of Material Facts Not in Dispute ("Statement" or "SOMF"), ECF No. 43-2, filed in support of its Motion for Summary Judgment, ECF No. 43. Subject to the following recurring objections, Defendants respond to the Statement on the grounds identified in the Table.

Objection No. 1: Defendants object to the Statement for failure to identify facts that are "material" to its motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that a fact is "material" only if it "might affect the outcome of the suit under the governing law"). The vast majority of Plaintiff's 205 "material" facts are not material to the resolution of Plaintiff's Motion for Summary Judgment. Rather than complying with this Court's rule, Plaintiff offers forty-one pages of factual assertions, including general background information and matters otherwise immaterial to this case.

Objection No. 2: Defendants object to the Statement because Plaintiff improperly asserts as facts, argument, opinions, characterizations, conclusory assertions, and conclusions of law.

Local Rule 7(h)(i) requires "a statement of material facts as to which the moving party contends there is no genuine issue;" it does not allow a party to set forth conclusions of law masked as facts. *See, e.g.*, *Johnson v. Wash. Metro. Area Transit Auth.*, 314 F. Supp. 3d 215, 216 (D.D.C. 2018) ("The Court will not . . . accept . . . conclusions [of law] masquerading as facts."); *Williams v. Ct. Servs. & Offender Supervision Agency for D.C.*, 110 F. Supp. 3d 111, 115 (D.D.C. 2015) (striking "statement of material facts" that included "argument . . . and assumptions"), *aff'd sub nom. Williams v. Ct. Servs. & Offender Supervision Agency*, No. 15-5275, 2016 WL 10968672 (D.C. Cir. May 31, 2016).

Objection No. 3: Defendants object to the Statement to the extent that Plaintiff asserts as facts, Plaintiff's speculation, news article contents, and internet webpage content. A summary judgment motion must be supported by admissible evidence or evidence that is capable of being reduced to an admissible format. *See* Fed. R. Civ. P. 56(c)(2); *Akers v. Liberty Mut. Grp.*, 744 F. Supp. 2d 92, 96 (D.D.C. 2010). Plaintiff's summary judgment exhibits that contain hearsay without an exception or lack authentication are inadmissible and should not be considered in support of Plaintiff's motion. *See* Fed. R. Evid. 802 (hearsay not admissible except in circumstances not applicable here); *Carter v. District of Columbia*, 795 F.2d 116, 128 (D.C. Cir. 1986) ("The specific accounts of allegations contained in newspaper articles were themselves of no probative value"); *Akers*, 744 F. Supp. 2d at 96 ("'[S]heer hearsay . . . counts for nothing' on summary judgment") (citations omitted). Plaintiff, as this evidence to support its summary judgment motion, bears the burden of establishing its admissibility. *See, e.g.*, *Congress v. Gruenberg*, 643 F. Supp. 3d 203, 215 (D.D.C. 2022) ("a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position") (citing Fed. R. Civ. P. 56(c)(1)); *see also*

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) ("[T]he court must determine first whether the moving party has met its burden of production[.]"). To the extent Plaintiff's Statement contains inadmissible material, the Court should not consider it in ruling on Plaintiff's motion for summary judgment.

**Table: Defendants' Responses to Plaintiff's Statement**

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 1. | On the evening of March 27, 2025, President Donald J. Trump issued an executive order titled *Exclusions from Federal Labor-Management Relations Programs*, Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025) (the Executive Order). | Defendants do not dispute this paragraph. |
| 2. | In Section 1 of the Order, the President determined that the agencies and agency subdivisions set forth in Section 2 of the Order "have as a primary function intelligence, counterintelligence, investigative, or national security work," and that "Chapter 71 of title 5, United States Code, cannot be applied to these agencies and agency subdivisions in a manner consistent with national security requirements and considerations." *Id.* § 1. | Subject to recurring Objection No. 2, Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 3. | Section 2 of the Order lists the agencies and agency subdivisions that the President determined should be excluded from the federal labor-management relations program. *Id.* § 2. | Subject to recurring Objection No. 2, Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 4. | The Order's exclusion of the agencies and agency subdivisions listed in Section 2 from the federal labor-management relations program strips collecting bargaining rights from "roughly 67 percent of the entire federal workforce and for 75 percent of workers who are already in a union." Hassan Ali Kanu, *Trump Moves to Strip Unionization Rights from Most Federal Workers*, Politico (Mar. 28, 2025, 11:04 AM), www.politico.com/news/2025/03/28/unio n-rights-federal-workers-donaldtrump-00257010. | Subject to recurring Objection Nos. 1 and 3, this paragraph is immaterial, outside of the record, and hearsay. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 5. | Section 2 of the Executive Order also provides,<br><br>Notwithstanding the forgoing, nothing in this section shall exempt from the coverage of Chapter 71 of title 5, United States Code:<br><br>(a) the immediate, local employing offices of any agency police officers, security guards, or firefighters, provided that this exclusion does not apply to the Bureau of Prisons;<br><br>(b) subdivisions of the United States Marshals Service not listed in section 1-209 of this order; or<br><br>(c) any subdivisions of the Departments of Defense or Veterans Affairs for which the applicable Secretary has issued an order suspending the application of this section pursuant to section 4. . . .<br><br>Exec. Order No. 14,251 § 2. | Subject to recurring Objection No. 2, Defendants object to Plaintiff's characterization of and legal conclusions regarding the Executive Order. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 6. | The American Federation of Government Employees (AFGE) represents employees of the Bureau of Prisons. About Us, Am. Fed'n of Gov't Emps., https://perma.cc/G8HU-324F (last visited June 6, 2025). | Subject to recurring Objection Nos. 1 and 3, this paragraph is immaterial and outside of the record. Defendants respectfully refer the Court to the referenced material for a true and accurate statement of its contents. |
| 7. | Section 7 of the Executive Order directs "the head of each agency with employees covered by Chapter 71 of title 5, United States Code" to "submit a report to the President that identifies any agency subdivisions" not already excluded from Chapter 71's provisions "(a) that have as a primary function intelligence, counterintelligence, investigative, or national security work" and "(b) for which the agency head believes the provisions of Chapter 71 . . . cannot be applied to such subdivision in a manner consistent with national security requirements and considerations." Exec. Order No. 14,251 § 7. | Subject to recurring Objection No. 2, Defendants object to Plaintiff's characterization of and legal conclusions regarding the Executive Order. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 8. | The same night that the Executive Order issued, Charles Ezell, Acting Director of the Office of Personnel Management (OPM), issued a memorandum to heads of departments and agencies providing guidance on implementing the Executive Order. Charles Ezell, *Guidance on Executive Order Exclusions from Federal Labor-Management Programs*, OPM (Mar. 27, 2025), https://perma.cc/Z2ZJY8U7 (OPM Guidance). | Subject to recurring Objection No. 1, this paragraph is undisputed but immaterial. Defendants respectfully refer the Court to the cited material, in its entirety, for a true and accurate statement of its contents. Charles Ezell, *Guidance on Executive Order Exclusions from Federal Labor-Management Programs*, OPM (Mar. 27, 2025), https://perma.cc/Z2ZJY8U7 (OPM Guidance). |

| | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 9. | According to the OPM Guidance, the agencies excluded from the provisions of the Federal Service Labor-Management Relations Statute (the Statute) through the Executive Order "are no longer subject to the collective bargaining requirements of chapter 71," and the unions representing bargaining unit employees at those agencies have "los[t] their status" as the exclusive representatives for those employees. *Id.* at 3. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document  and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents.  Charles Ezell, *Guidance on Executive Order Exclusions from Federal Labor-Management Programs*, OPM (Mar. 27, 2025), https://perma.cc/Z2ZJY8U7 (OPM Guidance). |
| 10. | The first section of the OPM Guidance is titled "Performance Accountability" and states that "[s]hortly after taking office the President issued multiple directives to facilitate the separation of underperforming employees." *Id.*<br>According to OPM, "[a]gency CBAs often create procedural impediments to separating poor performers beyond those required by statute or regulation." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents.  *Id.* |
| 11. | The OPM Guidance states that to implement the Executive Order, "agencies should cease participating in grievance procedures after terminating their [collective bargaining agreements (CBAs)]. To the extent that covered agencies and subdivisions are litigating grievances before an arbitrator when they terminate their CBAs, they should discontinue participation in such proceedings upon termination." *Id.* at 5. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents.  *Id.* |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 12. | Under the heading "Disregard Contractual RIF Articles," the OPM Guidance observes that "[t]he President has directed agencies to prepare large-scale reductions in force (RIFs)." *Id.* The OPM Guidance instructs that "[a]fter terminating their CBAs, covered agencies and subdivisions should conduct RIFs consistent with applicable statutory and regulatory requirements, but without regard to provisions in terminated CBAs that go beyond those requirements." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. *Id.* |
| 13. | Also on the same night that the Executive Order issued, the White House issued a Fact Sheet about the Executive Order. Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements (Mar. 27, 2025), https://perma.cc/26AL-73TZ (Fact Sheet). | Subject to recurring Objection No. 1, this paragraph is undisputed but immaterial. |
| 14. | The Fact Sheet indicates that the Civil Service Reform Act, of which the Statute is one part, "enables hostile Federal unions to obstruct agency management." *Id.* The Fact Sheet states, "This is dangerous in agencies with national security responsibilities[.]" *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. The White House, *Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements* (Mar. 27, 2025), https://perma.cc/26AL-73TZ. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 15. | The Fact Sheet states that "[c]ertain Federal unions have declared war on President Trump's agenda." *Id.* To support this claim, the Fact Sheet notes that "[t]he largest Federal union describes itself as 'fighting back' against Trump. It is widely filing grievances to block Trump policies." *Id.* The Fact Sheet continues, "President Trump supports constructive partnerships with unions who work with him; he will not tolerate mass obstruction that jeopardizes his ability to manage agencies with vital national security missions." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. *Id.* |
| 16. | On April 8, 2025, the Chief Human Capital Officers Council (CHCOC), an interagency forum led by the OPM Director, shared with agencies, including the Defendant agencies, a Frequently Asked Questions (FAQs) document about implementing the Executive Order. Declaration of Daniel Kaspar (Kaspar Decl.) (June 6, 2025) ¶ 7, Ex. 3. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the cited material, in its entirety, for a true and accurate statement of its contents. |
| 17. | The FAQs state that "[a]gencies should not terminate any CBAs until the conclusion of litigation or further guidance from OPM directing such termination." *Id.* at 1. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 18. | The FAQs state that "[a]gencies should not file any decertification petitions [to decertify bargaining units of covered agencies or subdivisions] until litigation regarding [the Executive Order] has been resolved." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |

| | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 19. | The FAQs give the following answer to the question, "Should agencies amend current filings with the FLRA for exceptions to arbitration awards where an arbitrator ordered relief for a bargaining unit covered under *Exclusions*?": <br><br> Agencies should ask the FLRA to hold these cases in abeyance pending the outcome of litigation, where practicable. . . . If the FLRA does not suspend deadlines or hold cases in abeyance agencies should take the position that the union lacks standing as it is not recognized as a result of [the Executive Order]. *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 20. | The FAQs state that each agency and agency subdivision covered by the Executive Order "is no longer subject to provisions of the Federal Service Labor-Management Relations Statute (FSLMRS) per the [Executive Order] and, therefore, the union [representing employees of that agency or agency subdivision] no longer has standing to file [an unfair labor practice] charge." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 21. | The FAQs advise agencies that are currently bargaining with unions that they "should suspend such negotiations until the conclusion of litigation." *Id.* at 3. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 22. | CHCOC issued updated FAQs on April 22, 2025. Kaspar Decl. ¶ 7, Ex. 4. | Subject to recurring Objection No. 1, this paragraph is undisputed but immaterial. |

|  | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 23. | The updated FAQs give the following advice to covered agencies about official time and union office space:<br><br>Agencies and subdivisions covered by [the Executive Order] must reclaim any agency space, furniture, equipment (e.g., computers, phones), and other resources previously utilized by labor unions for representational activities and repurpose those resources for agency business only. Employees of covered agencies and subdivisions who were previously authorized to use taxpayer-funded union time are no longer permitted use of such time and should only be conducting agency assigned work during their scheduled duty time. Supervisors should not approve any time and attendance records that include requests for and use of taxpayer-funded union time. . . . *Id.* at 4. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, in its entirety, for a true and accurate statement of its contents. |
| 24. | The updated FAQs give this advice to covered agencies if an arbitration is already scheduled under the negotiated grievance procedure with the union:<br><br>The agency should request that the arbitrator hold the case in abeyance pending the outcome of litigation regarding [the Executive Order]. If unable to delay the hearing, the agency should take the position that in accordance with [the Executive Order], the union is no longer the exclusive representative and there is no jurisdiction before the arbitrator.<br><br>*Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 25. | The updated FAQs tell covered agencies to handle impending changes in conditions of employment, and union inquiries regarding those changes, as follows:<br><br>An agency or subdivision covered by [the Executive Order], can implement the change without completing negotiations. Agencies may respond to a demand to bargain by a labor union by acknowledging receipt and informing the union that it will hold in abeyance their request pending the outcome of litigation over Executive Order 14251.<br><br>*Id.* at 5. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 26. | The updated FAQs direct that if an agency "receives a grievance from the union for an individual or unit that is no longer recognized in accordance with [the Executive Order]," the agency "should acknowledge receipt, inform the union that the grievance is being held in abeyance pending litigation for [the Executive Order], and provide a date the agency plans to update them." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 27. | The updated FAQs tell covered agencies not to respond to unions' information requests under 5 U.S.C. § 7114(b)(4) and to instead "hold the request[s] in abeyance pending the outcome of the litigation." *Id.* at 6. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 28. | The updated FAQs advise that "[i]f an excluded employee asks about continuing union dues, the agency should inform the employee that union dues allotments through a government payroll provider are not authorized at this time and that if they wish to continue paying union dues nonetheless, they may contact their union." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 29. | The updated FAQs also give these instructions about union dues allotments:<br><br>In taking steps to implement [the Executive Order], agencies may pause the collection of union dues allotments for those agencies or subdivisions identified in Exclusions while litigation is ongoing. However, agency payroll providers should not unilaterally terminate all union dues allotments without first consulting with their customer agencies. Instead, agency payroll providers should contact their customer agencies to identify which labor unions and employees are excluded from collective bargaining by Exclusions and limit the termination of dues allotments to those unions and employees.<br><br>*Id.* at 6–7. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 30. | Plaintiff National Treasury Employees Union (NTEU) is a labor union that, immediately before the Executive Order, represented nearly 160,000 federal government employees in thirty-seven agencies and departments. Kaspar Decl. ¶ 114. NTEU represents eleven federal agencies that the Executive Order excludes from the Statute's coverage entirely and another agency that the Order excludes in part. *Id.* ¶¶ 9, 10. | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |
| 31. | NTEU was founded in 1938 to represent a group of Internal Revenue Service revenue collectors. *Id.* ¶ 15. | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |

| | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 32. | NTEU has represented additional employees at additional agencies over the intervening years, and its role expanded when collective bargaining was extended to the federal sector by Executive Order 10988 by President Kennedy on January 17, 1962, and by law when Congress enacted the Statute in 1978. *See* Pub. L. No. 95-454. Kaspar Decl. ¶ 16. | Subject to recurring Objection Nos. 1 and 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact.  Defendants respectfully refer the Court to the cited law for a true and accurate statement of its contents. |
| 33. | NTEU represents approximately 76,892 bargaining-unit employees at the Internal Revenue Service (IRS). *Id.* ¶ 17. | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |
| 34. | The IRS is NTEU's largest and oldest bargaining unit. *Id.* ¶ 17. For the nearly half-century that the Statute has been in place, the IRS has fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU. *Id.* ¶ 29. | Subject to recurring Objection Nos. 1 and 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact.  Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |
| 35. | As part of the Department of Treasury, the IRS is one of the agencies excluded from the provisions of the Statute under Section 2 of the Executive Order. Exec. Order No. 14,251 § 2. | Subject to recurring Objection No. 2, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents.  Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 36. | The IRS is the revenue service for the federal government, responsible for collecting federal taxes and administering the Internal Revenue Code. *See* The agency, its mission and statutory authority, IRS, https://perma.cc/MYL8-LPMN (last updated Mar. 25, 2025); *see also* Kaspar Decl. ¶ 17. NTEU-represented employees at the IRS provide tax assistance to taxpayers, conduct taxpayer audits, and collect overdue tax revenue. *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterizations of Defendant IRS and respectfully refer the Court to the cited website and the Norris Declaration for a true and accurate description of this Defendant.  *See* Norris Decl. at ¶ 4. |

| | Assertion by Plaintiff<br>in Statement of Facts | Defendants' Responses |
|---|---|---|
| 37. | The IRS and NTEU agreed that their current collective-bargaining agreement would last until September 2027. *Id.* ¶ 43(a). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. *See* Norris Decl. at ¶ 5(c). |
| 38. | The IRS Office of Chief Counsel is responsible for providing legal guidance and interpretive advice to the IRS, to Treasury, and to taxpayers; and coordinating the IRS's position in litigation. *See Internal Revenue Manual* 1.1.6.1 (June 18, 2015), https://perma.cc/HE27-3BX9. NTEU represents employees at the IRS Office of Chief Counsel who perform those functions. Kaspar Decl. ¶ 18. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterizations and respectfully refer the Court to the website (www.irs.gov) for a true and accurate statement of its contents. as well as the Norris Declaration. *See* Norris Decl. at ¶ 5. |
| 39. | NTEU has represented bargaining-unit workers at the IRS Office of Chief Counsel since March 1987. *Id.* ¶ 30. During that period, the IRS Office of Chief Counsel has fallen within the Statute's coverage and had a collective bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 & 2, this paragraph is immaterial and contains a legal conclusion, not a statement of fact. Norris Decl. at ¶ 5. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |
| 40. | As part of the Department of Treasury, the IRS Office of Chief Counsel is one of the agencies excluded from the provisions of the Statute under Section 2 of the Executive Order. Exec. Order No. 14,251 § 2. | Subject to recurring Objection No. 2, Defendants dispute this paragraph, which contains a legal conclusion, but respectfully refer the Court to the Executive Order for a true and accurate statement of its exemptions. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 41. | IRS Office of Chief Counsel and NTEU agreed that their current collective-bargaining agreement would last until January 2029. Kaspar Decl. ¶ 43(b). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. *See* Norris Decl. at ¶ 5(d). |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 42. | NTEU represents employees in the following agencies or subdivisions of the Department of Health and Human Services (HHS) that the Executive Order excludes from the Statute: the Office of the Secretary, the Food and Drug Administration (FDA), the Administration for Strategic Preparedness and Response (ASPR), the Centers for Disease Control and Prevention (CDC), and the Office of Refugee Resettlement (ORR) in the Administration for Children and Families. *Id.* ¶ 19; Exec. Order No. 14,251 § 2. NTEU-represented employees at those agencies and subdivisions within HHS provide guidance and assistance on HHS's priorities; oversee state administration of HHS's programs; and inspect food and drugs. Kaspar Decl. ¶ 19. | Subject to recurring Objection No. 1, the first sentence in this paragraph is immaterial.<br><br>Subject to recurring Objection No.1, Defendants dispute Plaintiff's characterization in the second sentence and respectfully refer the Court to the Ballance Declaration for an accurate description of Defendant HHS. Ballance Decl. at ¶ 4. |
| 43. | The Office of the Secretary "administers and oversees the organization, its programs, and its activities." *HHS Agencies & Offices*, HHS, https://perma.cc/LU7H-ZW3G (last reviewed Apr. 15, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterizations of Defendant HHS and respectfully refer the Court to the website (www.hhs.gov) for a true and accurate statement of its contents. *See also* Ballance Decl. at ¶ 4. |
| 44. | The FDA "ensures that food is safe, pure, and wholesome; human and animal drugs, biological products, and medical devices are safe and effective; and electronic products that emit radiation are safe." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant HHS and respectfully refer the Court to the website (www.hhs.gov) for a true and accurate statement of its contents. *See also* Ballance Decl. at ¶ 4(c). |
| 45. | ASPR "leads the nation's medical and public health preparedness for, response to, and recovery from disasters and public health emergencies." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant HHS and respectfully refer the Court to the website (www.hhs.gov) for a true and accurate statement of its contents. *See also* Ballance Decl. at ¶ 4(d) and 42 U.S.C. § 300hh-10(f)(1). |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 46. | CDC "protects the public health of the nation by providing leadership and direction in the prevention and control of diseases and other preventable conditions, and responding to public health emergencies." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant HHS and respectfully refer the Court to the website (www.hhs.gov) for a true and accurate statement of its contents. |
| 47. | ORR's mission is "to promote the health, well-being, and stability of refugees, unaccompanied alien children, and other eligible individuals and families, through culturally responsive, trauma-informed, and strengths-based services." *Office of Refugee Resettlement*, HHS, https://perma.cc/SH7G-855M. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the website (https://acf.gov/orr) for a true and accurate statement of its contents. *See also* Ballance Decl. at ¶ 4(e). |
| 48. | NTEU has represented bargaining-unit workers at HHS since November 1978. Kaspar Decl. ¶ 31. During that period, HHS has fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 & 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact. Ballance Decl. at ¶ 5. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |
| 49. | HHS and NTEU agreed that their current collective-bargaining agreement would last until July 2028 and then further extended its duration to July 2029. *Id.* ¶ 43(c). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. *See* Ballance Decl. at ¶ 5. |
| 50. | Section 2 of the Executive Order lists the Federal Communications Commission (FCC) as an agency excluded from the Statute. Exec. Order 14,251 § 2. | Subject to recurring Objection No. 2, Defendants object to Plaintiff's characterization of and legal conclusions regarding the Executive Order. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 51. | FCC regulates interstate and international communications by radio, television, wire, satellite, and cable across the nation. *See What We Do*, FCC, https://perma.cc/XG8B-5M56 (last visited June 5, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant FCC and respectfully refer the Court to the website (www.fcc.gov) for a true and accurate statement of its contents. *See also* Stephens Decl. at ¶ 3. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 52. | NTEU represents employees at FCC who review and act on license applications for radio, enforce FCC rules regarding construction and operation of communications systems, and respond to consumer inquiries. Kaspar Decl. ¶ 23. Their work promotes connectivity, ensures a competitive market, and protects consumers in wide ranging ways, including robocall enforcement. *Id.* | Subject to recurring Objection No.1, Defendants dispute Plaintiff's characterizations in this paragraph and respectfully refer the Court to the Stephens Declaration for an accurate description of Defendant FCC. Stephens Decl. at ¶ 3. |
| 53. | NTEU has represented bargaining-unit workers at the FCC since July 1978. *Id.* ¶ 32. During that period, the FCC has fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 & 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact. Stephens Decl. at ¶ 5. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |
| 54. | FCC and NTEU agreed that their current collective-bargaining agreement would last until March 2030. *Id.* ¶ 43(f). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. Stephens Decl. at ¶ 5. |
| 55. | Section 2 of the Executive Order lists the Department of Energy (DOE), except for the Federal Energy Regulatory Commission, as an agency excluded from the Statute. Exec. Order 14,251 § 2. | Subject to recurring Objection No. 2, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 56. | DOE is responsible for ensuring that the United States has access to reliable, affordable, and cleaner sources of energy. *About the Office of Energy Efficiency and Renewable Energy*, DOE, https://perma.cc/W65V-N8DZ (last visited June 5, 2025). Its work includes advancing energy technologies, managing the nation's energy resources, and addressing environmental impacts from past energy related activities. *Mission*, DOE, https://perma.cc/UF3R-Y42Q (last visited June 5, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant DOE and respectfully refer the Court to the website (www.energy.gov) for a true and accurate statement of its contents. *See also* Trznadel Decl. at ¶ 3. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 57. | NTEU-represented employees at DOE evaluate the effectiveness and efficiency of DOE programs and provide information and advice to DOE management on its programs and operations. Kaspar Decl. ¶ 27. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the Trznadel Declaration for an accurate description of Defendant DOE.  Trznadel Decl. at ¶ 3. |
| 58. | NTEU has represented bargaining-unit workers at DOE since January 1979. *Id.* ¶ 33. During that period, DOE has fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 & 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact.  Trznadel Decl. at ¶ 6.  Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |
| 59. | DOE and NTEU agreed that their current collective-bargaining agreement would last until January 2026. *Id.* ¶ 43(d). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. Trznadel Decl. at ¶ 6. |
| 60. | As part of the Department of Treasury, the Bureau of the Fiscal Service (BFS) is one of the agencies or agency subdivisions that Section 2 of the Executive Order excludes from the Statute. Exec. Order 14,251 § 2. | Subject to recurring Objection No. 2, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents.  Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 61. | BFS manages the government's accounting and federal centralized payment systems as well as the public debt. *See About Us*, BFS, https://perma.cc/Z3KP-4DH4 (last modified Jan. 23, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant BFS and respectfully refer the Court to the website (www.fiscal.treasury.gov) for a true and accurate statement of its contents.  *See* Norris Decl. at ¶ 3. |
| 62. | NTEU-represented employees at BFS work to ensure that Americans receive their federal government payments on time. Kaspar Decl. ¶ 20. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the Norris Declaration for an accurate description of Defendant Treasury.  Norris Decl. at ¶ 3. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 63. | NTEU has represented bargaining-unit workers at BFS since April 1985. *Id.* ¶ 34. During that period, BFS has fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 & 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact. Norris Decl. at ¶ 5. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |
| 64. | BFS and NTEU agreed that their current collective-bargaining agreement would last until August 2025. *Id.* ¶ 43(k). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. Norris Decl. at ¶ 5(b). |
| 65. | Section 2 of the Executive Order lists the Environmental Protection Agency (EPA) as an agency excluded from the Statute. Exec. Order 14,251 § 2. | Subject to recurring Objection No. 2, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 66. | EPA ensures compliance with and the fair administration of environmental laws and acts to conserve natural resources. *See Our Mission and What We Do*, EPA, https://perma.cc/4JCG-GL3E (last updated Feb. 28, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant EPA and respectfully refer the Court to the website (www.epa.gov) for a true and accurate statement of its contents. *See also* Molina Decl. at ¶ 3. |
| 67. | NTEU-represented employees at EPA conduct studies and research on environmental issues; develop and enforce environmental regulations; and provide technical assistance. Kaspar Decl. ¶ 22. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the Molina Declaration for an accurate description of Defendant EPA. Molina Decl. at ¶ 3. |
| 68. | NTEU has represented bargaining-unit workers at EPA since April 1998. *Id.* ¶ 35. During that period, the EPA has fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU without any adverse effect on national security interests. *Id.* | Subject to recurring Objection Nos. 1 & 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact. further, Defendants dispute there has not been any adverse effect on national security interests. "The NTEU CBA generally interferes with EPA's ability to execute and implement the President's initiatives related to national security." Molina Decl. at ¶ 7. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |

|    | **Assertion by Plaintiff<br>in Statement of Facts** | **Defendants' Responses** |
|----|---|---|
| 69. | EPA and NTEU agreed that their current collective-bargaining agreement would last until December 2028. *Id.* ¶ 43(e). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents.  Molina Decl. at ¶ 5. |
| 70. | As part of the Department of Treasury, Treasury's Departmental Offices are among the agencies and agency subdivisions that Section 2 of the Executive Order excludes from the Statute. Exec. Order 14,251 § 2. | Subject to recurring Objection No. 2, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents.  Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 71. | Treasury's Departmental Offices "are primarily responsible for the formulation of policy and management of the Department as a whole." *Organization and Functions*, U.S. Dep't of the Treasury, https://perma.cc/K6D5-4NVY (last visited June 5, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant Departmental Offices and respectfully refer the Court to the website (www.treasury.gov) for a true and accurate statement of its contents.  *See* Norris Decl. at ¶ 3. |
| 72. | NTEU has represented bargaining-unit workers at Treasury's Departmental Offices since May 2002. Kaspar Decl. ¶ 36. NTEU-represented employees provide logistical support, such as assuring adequate supplies, equipment, and mail services; distribute mail; and perform building repairs. Id. During that period, Treasury's departmental offices have fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 & 2, with regard to the first and third sentences, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents.<br><br>Subject to recurring Objection No.1, regarding the second sentence in this paragraph, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the Norris Declaration for an accurate description of Defendant Treasury.  Norris Decl. at ¶ 3. |

| | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 73. | Treasury Departmental Offices and NTEU's 2009 CBA provided for an initial three-year term until June 2012 and annual automatic renewal each year thereafter until either party provides notice of its contrary intent. The CBA has automatically renewed each year since 2012. For 2025, neither party gave notice so the CBA will renew again on June 14. Thus, the CBA will remain in effect at least until June 2026. *Id.* ¶ 43(h). | Subject to recurring Objection No. 1, dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. *See* Norris Decl. at ¶ 5. |
| 74. | A bureau within the Treasury, the Office of the Comptroller of the Currency (OCC) is excluded from the Statute under Section 2 of the Executive Order. Exec. Order 14,251 § 2. | Subject to recurring Objection No. 2, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 75. | OCC ensures that national banks and federal savings associations operate in a safe and sound manner and provide fair access to financial services. *What We Do*, OCC, https://perma.cc/TNC5-TRJS (last visited June 5, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant OCC and respectfully refer the Court to the website (www.occ.gov) for a true and accurate statement of its contents. *See* Norris Decl. at ¶ 3. |
| 76. | NTEU-represented employees at OCC examine banks to ensure they are complying with banking rules and regulations that protect consumers. Kaspar Decl. ¶ 25. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the Norris Declaration for an accurate description of Defendant Treasury. Norris Decl. at ¶ 3. |
| 77. | NTEU has represented bargaining-unit workers at OCC since November 2002. *Id.* ¶ 37. During that period, OCC has fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 & 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion and not a statement of fact. Norris Decl. at ¶ 5. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |
| 78. | NTEU and OCC agreed that their current collective-bargaining agreement would last at least until 2028. *Id.* ¶ 43(g). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. Norris Decl. at ¶ 5(e). |

|    | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|----|---|---|
| 79. | A bureau under Treasury, the Alcohol and Tobacco Tax and Trade Bureau (TTB) is excluded from the Statute under Section 2 of the Executive Order. Exec. Order 14,251 § 2. | Subject to recurring Objection No. 2, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 80. | TTB collects taxes on alcohol, tobacco, firearms, and ammunition; ensures the integrity of alcohol products; ensures that only qualified businesses enter the alcohol and tobacco industries; and prevents unfair and unlawful market activity for alcohol and tobacco products. *About TTB*, TTB, https://perma.cc/2LXKHSY8 (last updated Feb. 3, 2021). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant TTB and respectfully refer the Court to the website (www.ttb.gov) for a true and accurate statement of its contents. See Norris Decl. at ¶ 3. |
| 81. | NTEU-represented employees at TTB review applications for permits for beer, wine, and spirits producers and manufacturers and investigate those entities for product integrity, tax collection, and compliance. Kaspar Decl. ¶ 26. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the Norris Declaration for an accurate description of Defendant Treasury. Norris Decl. at ¶ 3. |
| 82. | NTEU has represented bargaining-unit workers at TTB since October 2003. *Id.* ¶ 38. During that period, TTB has fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact. Norris Decl. at ¶ 5. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |
| 83. | TTB and NTEU agreed that their current collective-bargaining agreement would last until January 2027. *Id.* ¶ 43(i). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. Norris Decl. at ¶ 5(f). |
| 84. | Section 2 of the Executive Order lists the Bureau of Land Management (BLM) as one of the agencies or agency subdivisions excluded from the Statute. Exec. Order 14,251 § 2. | Subject to recurring Objection No. 2, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 85. | BLM sustains the health, diversity, and productivity of public lands for the use and enjoyment of the public. *Our Mission*, BLM, https://perma.cc/QXY8-Z42H (last visited June 5, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant BLM and respectfully refer the Court to the website (www.blm.gov) for a true and accurate statement of its contents. *See also* Holmes Decl. at ¶ 4. |
| 86. | NTEU represents employees at BLM who manage public lands for various purposes, including energy development, livestock grazing, recreation, and resource conservation; and maintain natural, cultural, and historic resources. Kaspar Decl. ¶ 21. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the Holmes Declaration for an accurate description of Defendant DOE. Holmes Decl. at ¶ 4. |
| 87. | NTEU has represented bargaining-unit workers at BLM since February 2021. *Id.* ¶ 39. During that period, BLM has fallen within the Statute's coverage and had a collective-bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 & 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact. Holmes Decl. at ¶ 6. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |
| 88. | BLM has three different collective-bargaining agreements with NTEU, each covering a different portion of the agency. *Id.* ¶ 43(j). | Subject to recurring Objection No. 1, Defendants dispute the characterization of the agreements; it is one agreement and two memoranda of understanding. Holmes Decl. at ¶ 6–7. |
| 89. | For one part of BLM, NTEU and BLM agreed that an interim collective-bargaining agreement would last until a comprehensive collective bargaining agreement became effective. *Id.* For a second part of BLM, the parties agreed that the collective-bargaining agreement would last until January 2028. *Id.* For a third part of BLM, the parties agreed that the collective-bargaining agreement would last until February 2030. *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents; further, Defendants dispute the characterization of the agreement as a single agreement because it is one agreement and two memoranda of understanding. Holmes Decl.at ¶ 6–7. |
| 90. | Section 2 of the Executive Order lists the Department of Justice (DOJ) as one of the agencies excluded from the Statute. Exec. Order 14,251 § 2. | Subject to recurring Objection No. 2, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the Executive Order for a true and accurate statement of its contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |

|  | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 91. | NTEU represents employees in two divisions of DOJ: the Civil Rights Division and the Environment and Natural Resources Division. Kaspar Decl. ¶ 89. | Subject to recurring Objection No. 1, this paragraph is undisputed but immaterial. Hirt Decl. at ¶ 5. |
| 92. | The Environment and Natural Resources Division is responsible for bringing cases against those who violate the nation's environmental laws and defending the federal government in litigation arising under a broad range of environmental statutes. *Environment and National Resources Division*, Env't & Natural Res. Div., DOJ, https://perma.cc/X9AW-UTXC (last visited June 5, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant DOJ and respectfully refer the Court to the website (www.justice.gov) for a true and accurate statement of its contents. *See also* Hirt Decl. at ¶ 5. |
| 93. | The Civil Rights Division works to uphold the civil and constitutional rights of all persons in the United States and enforce federal statutes prohibiting discrimination. *Our Work*, C.R. Div., DOJ, https://perma.cc/94KK-HWQ4 (last updated Mar. 12, 2025). | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Defendant DOJ and respectfully refer the Court to the website (www.justice.gov) for a true and accurate statement of its contents. *See also* Hirt Decl. at ¶ 5. |
| 94. | NTEU-represented employees in these DOJ divisions are attorneys who enforce the laws that their division is charged with upholding. Kaspar Decl. ¶ 28. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refer the Court to the Hirt Declaration for an accurate description of Defendant DOJ. Hirt Decl. at ¶ 5. |
| 95. | NTEU has represented bargaining-unit workers at DOJ since January 2025, but the parties do not yet have a written CBA. *Id.* ¶ 40. During that period, DOJ has fallen within the Statute's coverage. *Id.* | Subject to recurring Objection Nos. 1 & 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and contains a legal conclusion, not a statement of fact. Hirt Decl. at ¶ 6. Defendants respectfully refer the Court to the referenced law for a true and accurate statement of its contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 96. | Federal law requires that "[i]f an agency has received from an employee in an appropriate unit a written assignment which authorizes the agency to deduct from the pay of the employee amounts for the payment of regular and periodic dues of the exclusive representative of the unit, the agency shall honor the assignment and make an appropriate allotment pursuant to the assignment." 5 U.S.C. § 7115(a). | Subject to recurring Objection Nos. 1 and 2, Defendants dispute Plaintiff's characterization of federal law.  Defendants respectfully refer the Court to the referenced statute for a true and accurate statement of its contents.  5 U.S.C. § 7115. |
| 97. | In addition, every collective-bargaining agreement that NTEU has with the agencies named as defendants in this action has a provision requiring the agencies to process payroll deductions for dues if the employee so requests. Kaspar Decl. ¶ 46. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute Plaintiff's characterization of the referenced document and legal conclusion and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. |
| 98. | Payroll for federal employees is processed by different agencies. Many are processed by the National Finance Center (NFC) within the U.S. Department of Agriculture. Id. ¶ 47. NTEU-represented agencies that use NFC include the FCC and the Department of Treasury (including the IRS, IRS Office of Chief Counsel, BFS, TTB, Office of the Comptroller of the Currency, and Departmental Offices). Id. | Subject to recurring Objection No. 1, Defendants do not dispute that the National Finance Center processes federal employee payroll.  Otherwise, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |
| 99. | Other agencies have payroll processed by the Interior Business Center (IBC) within the U.S. Department of Interior. Id. ¶ 48. NTEU-represented agencies that use IBC include BLM and EPA. Id. | Subject to recurring Objection No. 1, Defendants do not dispute that the Interior Business Center processes federal employee payroll.  Otherwise, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial |
| 100. | Other agencies have payroll processed by the Defense Finance Accounting Service (DFAS) within the U.S. Department of Defense. Id. ¶ 49. NTEU-represented agencies that use DFAS include DOE and HHS. Id. | Subject to recurring Objection No. 1, Defendants do not dispute that the Defense Finance Accounting Service processes federal employee payroll.  Otherwise, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |

25

|  | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 101. | Payroll periods in the federal government are generally every two weeks, although they are numbered differently if employees are paid through different agencies. *Id.* ¶ 50. For example, the two-week pay period of March 9, 2025 through March 22, 2025 is Pay Period 5 for NFC-paid employees and is Pay Period 7 for IBC-paid employees. *Id.* | Subject to recurring Objection No. 1, Defendants do not dispute that the federal pay period is generally two weeks, but this fact is immaterial. Otherwise, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |
| 102. | Federal employees are typically paid on or around the second Thursday after the end of a pay period. *Id.* ¶ 51. For example, for the pay period running from March 9, 2025 through March 22, 2025, employees would typically receive their pay (after any withholdings are taken out) on or about April 2 or 3, 2025. *Id.* If the employee elected to have dues withheld and remitted to NTEU, NTEU would typically receive those dues on or about April 1, 2025. *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization, which is any event, is immaterial. |
| 103. | On January 20, 2025, NTEU filed a lawsuit against President Trump and others in his administration challenging Executive Order No. 14,171, titled *Restoring Accountability to Policy Influencing Positions Within the Federal Workforce*. *NTEU v. Trump*, No. 25-cv-170 (D.D.C. filed Jan. 20, 2025). | Subject to recurring Objection No. 1, this paragraph is immaterial, but Defendants respectfully refer the Court to the case docket for a true and accurate statement of its contents. *NTEU v. Trump*, No. 25-cv-170 (D.D.C. filed Jan. 20, 2025). |
| 104. | On February 9, 2025, NTEU filed a lawsuit against the Acting Director of the Consumer Financial Protection Bureau (CFPB) challenging the CFPB's disclosure of employees' personal information to Elon Musk and the Department of Government Efficiency. *NTEU v. Vought*, No. 25-cv-380 (D.D.C. filed Feb. 9, 2025). | Subject to recurring Objection No. 1, this paragraph is immaterial, but Defendants respectfully refer the Court to the case docket for a true and accurate statement of its contents. *NTEU v. Vought*, No. 25-cv-380 (D.D.C. filed Feb. 9, 2025). |

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 105. | On February 9, 2025, NTEU filed another lawsuit against the Acting Director of the CFPB challenging the Trump Administration's efforts to dismantle that agency. *NTEU v. Vought*, No. 25-cv-381 (D.D.C. filed Feb. 9, 2025). | Subject to recurring Objection No. 1, this paragraph is immaterial, but Defendants respectfully refer the Court to the case docket for a true and accurate statement of its contents. *NTEU v. Vought*, No. 25-cv-381 (D.D.C. filed Feb. 9, 2025). |
| 106. | On February 12, 2025, NTEU and a coalition of other federal-sector unions filed a lawsuit against President Trump and others in his administration challenging Executive Order No. 14,210, the mass firing of probationary employees, and the deferred resignation program. *NTEU v. Trump*, 25-cv-420 (D.D.C. filed Feb. 12, 2025). | Subject to recurring Objection No. 1, this paragraph is immaterial, but Defendants respectfully refer the Court to the case docket for a true and accurate statement of its contents. *NTEU v. Trump*, 25-cv-420 (D.D.C. filed Feb. 12, 2025). |
| 107. | NTEU has also filed dozens of grievances in response to the Trump Administration's actions against federal workers. Kaspar Decl. ¶ 12. | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 108. | The Executive Order is affecting how the Federal Labor Relations Authority (FLRA) is handling labor-relations matters. For example, NTEU has multiple petitions pending before the FLRA regarding whether various contract provisions are negotiable or not. For agencies covered by the Executive Order, the FLRA has issued a series of show cause orders stating:<br><br>On March 27, 2025, President Donald J. Trump amended Executive Order 12,171 (1979), pursuant to 5 U.S.C. § 7103(b)(1) and 22 U.S.C. § 4103(b), to exclude certain agencies and agency subdivisions from the coverage of the Federal Service Labor-Management Relations Statute (the Statute). Accordingly, the Authority directs the Union to show cause why the Authority should not dismiss this matter for lack of jurisdiction. Kaspar Decl. ¶ 111, Ex. 45. These show cause orders cite Authority precedent regarding the dismissal of cases involving agency components excluded from coverage under the Statute. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants dispute Plaintiff's characterization and legal conclusions, which in any event, are immaterial. Defendants respectfully refer the Court to the referenced statute, show cause orders, and Executive Order for a true and accurate statement of their contents. Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025). |
| 109. | The FLRA has also paused an unfair labor practice proceeding brought by NTEU against BLM because of the Executive Order. *Id.* ¶ 112, Ex. 46. | Subject to recurring Objection Nos. 1, 2, and 3, Defendants dispute this characterization of Exhibit 46 and respectfully refer the Court to the referenced document for a true and accurate statement of its contents. |
| 110. | Arbitrators have paused action on lawfully filed grievances because of the Executive Order. *Id.* ¶ 110. | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial |

|  | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 111. | Arbitrator Stephen E. Alpern informed NTEU on April 3, 2025 that he was staying further proceedings in a grievance about the validity of the applicable BLM–NTEU CBA because "the Agency raises the contention that [pursuant to] an Executive Order 14251 (90 FR 14553, March 27, 2025), the President excluded the Agency from the provisions of Chapter 7[1] of title 5, United States Code." Kaspar Decl. ¶ 110, Ex. 44. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of Exhibit 44 and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 112. | The largest federal-sector union, AFGE, has announced it is laying off half its staff nationwide because of the effect of this Administration's actions on its finances. *Id.* ¶ 136. | Subject to recurring Objection Nos. 1 and 3, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and based on hearsay. |
| 113. | NTEU regularly tells arbitrators, courts, members of Congress, and the public that it represents more than 150,000 employees in thirty-seven federal agencies and departments across the government. *Id.* ¶ 117. | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |
| 114. | The Executive Order substantially reduced the number of employees that NTEU represented. *Id.* ¶ 115. | Subject to recurring Objections Nos. 1 and 2, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |
| 115. | At the end of December 2024, NTEU represented 158,144 employees. *Id.* ¶ 116. Taken together, the number of employees whom NTEU represents and who are in agencies covered by the Executive Order is 104,278. *Id.* This means that the Executive Order has cut the number of NTEU-represented employees by two-thirds (65.9%). *Id.* | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 116. | The Executive Order requires termination of twelve of NTEU's collective-bargaining agreements. *Id.* ¶ 44. Because a small portion of HHS is not covered by the Executive Order, a small portion of NTEU's collective-bargaining agreement with HHS will still exist. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants dispute Plaintiff's characterization and legal conclusion and respectfully reference the Court to Executive Order for a true and accurate statement of its contents.  Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025).  *See also* Balance Decl. . |
| 117. | NTEU staff frequently bargain with agencies over changes in employment conditions. *Id.* ¶ 126. To initiate bargaining over such changes, NTEU is required to notify the agency within a certain timeframe (often 30 days or less) after NTEU first receives notice of the change. *Id.* So, if agencies covered by the Executive Order refuse to collectively bargain with NTEU, NTEU will lose that bargaining opportunity not just in the short term but forever. *Id.* ¶ 127. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute this paragraph, which is immaterial, speculative, and contains a legal conclusion. |
| 118. | If agencies had simply refused to engage in bargaining during the COVID-19 outbreak, for example, NTEU would have missed its chance to advocate for its members on issues like telework and the availability of personal protective equipment. *Id.* ¶ 128. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute this paragraph as immaterial and speculative. |
| 119. | Without dues from agencies covered by the Executive Order, NTEU's annual dues revenue will fall by about $25 million. *Id.* ¶ 132. This is more than half of NTEU's total revenue stream. *Id.* | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and speculative. |
| 120. | Some NTEU members in agencies listed in the Executive Order cancelled their membership because of the Executive Order. *Id.* ¶ 121. | Subject to recurring Objection Nos. 1 and 3, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and not supported by the reference. |
| 121. | For example, an NTEU member within the FDA told HHS on April 28, 2025 that "President Trump demolished the union several weeks ago . . . Please see the attached form, SF-1188 to end my participation in NTEU." *Id.* ¶ 121, Ex. 47. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 122. | Of the nearly 160,000 employees whom NTEU represented before the Executive Order was issued, approximately 91,000 voluntarily joined NTEU and paid dues. *Id.* ¶ 129. The vast majority of those—94%—took advantage of the option to have their employer agencies deduct dues from their paychecks automatically and remit the dues to NTEU. *Id.* | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |
| 123. | In the NTEU-represented agencies and agency components that the Executive Order excludes from the Statute, NTEU has approximately 58,692 dues paying members. *Id.* ¶ 130. | Subject to recurring Objection No. 1, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial. |
| 124. | EPA, BLM, FCC, IRS, IRS Office of Chief Counsel, BFS, TTB, OCC, and Treasury Departmental Offices ceased dues withholding before the District Court entered its preliminary injunction. *Id.* ¶¶ 53, 54, 131. Those agencies have again ceased dues withholding since the court of appeals stayed the preliminary injunction. *Id.* ¶ 57. In addition, agencies that did not cut off dues withholding before the preliminary injunction, including DOE and the components of HHS excluded from the Statute's coverage by the Executive Order, have announced that they will cease these deductions following the D.C. Circuit stay of the injunction. *Id.* ¶¶ 58, 131. | Subject to recurring Objection No. 1, Defendants dispute this paragraph, which mischaracterizes the referenced declaration paragraphs. *See* ¶¶ 98–100, *supra*. |
| 125. | On May 30, 2025, NTEU learned that DFAS would stop collecting and remitting union dues starting with the pay period ending on May 31. *Id.* ¶ 58. NTEU lost over $2 million in dues revenue before this Court's preliminary injunction order went into effect. *Id.* ¶¶ 55–56. As of May 4, 2025, NTEU had lost at least $3 million in dues revenue it would have received if the Executive Order had not gone into effect. *Id.* ¶ 133. | Subject to recurring Objection Nos. 1 and 3, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and speculative. |

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 126. | As of June 2, 2025, NTEU had lost more than $4 million in expected dues revenue from agencies' failure to withhold and remit NTEU dues—as requested by member employees—based on the Executive Order. *Id.* ¶ 134. It will continue to lose more than $1 million in dues revenue per two-week pay period while the Executive Order remains in effect. *Id.* This loss of dues from automatic withholding from such a large percentage of NTEU's membership threatens NTEU's very existence. *Id.* ¶ 135. | Subject to recurring Objection Nos. 1 and 3, Defendants lack sufficient knowledge to form a belief as to the truth of this paragraph, which, in any event, is immaterial and speculative. |
| 127. | IBC stated in a March 28, 2025 email that "[a]s a result of Executive Order 'Exclusions from Federal Labor-Management Relations Programs' published March 27, 2025, the Interior Business Center (IBC) was directed to remove all union deductions from the Pay Period 25-07 calculate file." *Id.* ¶ 53, Ex. 5. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 128. | Updating an earlier notice, NFC stated in an April 9, 2025 notice that it was providing additional information "regarding halting union dues deductions" and was taking action "to ensure the termination of future union deductions[.]" *Id.* ¶ 54, Ex. 6. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 129. | Every affected agency employing NTEU-represented workers has failed to comply with its statutory and/or contractual collective-bargaining obligations in at least one respect on account of the Executive Order. *Id.* ¶ 59. These instances of noncompliance with collective-bargaining obligations include dues with holding stoppages; evictions from union offices; and refusals to grant official time, bargain with NTEU, and proceed with grievances and arbitrations. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph as a legal conclusion. |

| | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 130. | An IRS representative told NTEU staff on April 2, 2025, that "[d]ue to the Executive Order on Thursday, we are currently in a holding pattern in terms of grievances." *Id.* ¶ 60, Ex. 7. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 131. | Article 42 of the IRS–NTEU CBA requires the agency to process grievances consistent with the procedures specified therein. *Id.* ¶ 60. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute the paragraph, which is a legal conclusion and respectfully refer the Court to the referenced Article for a true and correct statement of its contents. |
| 132. | On April 4, 2025, the IRS distributed a notice to employees stating that "[t]he IRS has begun implementing a Reduction in Force (RIF) that will result in staffing cuts across multiple offices and job categories." *Id.* ¶ 61, Ex. 8. The IRS began this process without following the RIF provisions in Article 19 of the IRS–NTEU collective-bargaining agreement, such as required advance notice to NTEU's President. *Id.* ¶ 61. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute Plaintiff's characterization of the referenced document and the legal conclusion. Defendants respectfully refer the Court to the referenced Article for a true and correct statement of its contents. |
| 133. | Notices to IRS employees affected by the RIF stated:<br><br>Collective bargaining agreements required additional steps before proceeding with a RIF, including extended negotiation periods and waiting periods. However, President Trump signed an executive order entitled "Exclusions from Federal Labor-Management Relations Programs." Application of the national security exemption from collective-bargaining requirements under this executive order and resulting guidance from the Office of Personnel Management eliminates non-statutory delays in executing a RIF. *Id.* ¶ 62, Ex. 9. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the referenced document, in its entirety, for a true and accurate statement of its contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 134. | IRS failed to withhold NTEU dues from members' paychecks for NFC Pay Period 9, the first affected pay period following the D.C. Circuit's stay of the District Court's preliminary injunction. *Id.* ¶ 65. | Subject to recurring Objection No. 1, Defendants dispute this paragraph.  *See* ¶¶ 98–100. |
| 135. | The agency is required to withhold dues under 5 U.S.C. § 7115(a) and Article 10 of the IRS–NTEU collective-bargaining agreement. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants dispute the paragraph, which is a legal conclusion.  Defendants respectfully refer the Court to the cited statute and reference Article, in their entirety, for a true and accurate statement of their contents. |
| 136. | On April 10, 2025, the IRS Office of Chief Counsel acting on IRS's behalf informed NTEU by email that its representatives could not proceed with scheduling an arbitration hearing because they were "awaiting further guidance on the Executive Order relating to the CBA." *Id.* ¶ 63, Ex. 10. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents.1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 137. | Article 43 of the IRS–NTEU collective-bargaining agreement requires the agency to participate in arbitration consistent with the procedures specified therein. *Id.* ¶ 63. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion.  Defendants respectfully refer the Court to the reference Article, in its entirety, for a true and accurate statement of its contents. |
| 138. | On May 21, 2025, a representative of the IRS Office of Chief Counsel acting on IRS's behalf informed two arbitrators in separate emails that the agency "ha[d] been instructed to refrain from participating in any activities related to collective bargaining, including having any substantive contact with the union. Substantive contact is basically anything more than notifying the union that we are not to have contact." *Id.* ¶ 64, Exs. 11, 12. The agency's failure to engage in any substantive contact with NTEU conflicts with several provisions of the IRS–NTEU CBA (e.g., Articles 8, 23, 25, 27, 30), as well as the Statute. | Subject to recurring Objection Nos. 1, 2, and 3, Defendants dispute Plaintiff's characterization of the referenced document and legal conclusion, and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents.  Defendants dispute Plaintiff's characterization of the referenced document and legal conclusion in this paragraph and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 139. | The Office of Chief Counsel failed to withhold NTEU dues from members' paychecks for NFC Pay Period 9. *Id.* ¶ 67. | Subject to recurring Objection No. 1, Defendants dispute this paragraph. *See* ¶¶ 98–99, *supra*. |
| 140. | The agency is required to withhold dues under 5 U.S.C. § 7115(a) and Article 41 of the Office of Chief Counsel–NTEU collective-bargaining agreement. *Id.* ¶ 66. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 141. | Management at the Food and Drug Administration (FDA) told NTEU on March 31, 2025 that "[u]ntil further notice, the FDA is ending labor relation [sic] meetings with the exclusive representatives of (NTEU/AFGE) in adherence to the above referenced presidential Executive Order." *Id.* ¶ 95, Ex. 30. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 142. | On April 8, 2025, FDA told NTEU that NTEU representatives would not be allowed to participate in formal meetings with employees, stating that "to comply with EO 14251, Exclusions from Federal Labor-Management Relations Programs . . . management participating in this meeting will not be engaging with NTEU. . . ." *Id.* ¶ 96, Ex. 31. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 143. | The agency's refusal to allow union representatives to participate conflicts with Articles 5 and 7 of the HHS–NTEU CBA. *Id.* ¶ 96. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the referenced document for a true and accurate statement of their contents. |
| 144. | On April 9, 2025, the FDA rescinded its previous approval of NTEU's presence at a meeting between management and an employee, again citing the Executive Order. *Id.* ¶ 97, Ex. 32. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the cited April 9, 2025 communication and legal conclusion and respectfully refer the Court to the referenced exhibit, in its entirety, for a true and accurate statement of its contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 145. | On May 27, 2025, an HHS representative emailed an arbitrator and NTEU to request that the arbitrator hold the arbitration before him "in abeyance pending the outcome of litigation regarding E.O. 14251." *Id.* ¶ 98, Ex. 33. An HHS representative emailed another arbitrator on May 29, 2025, with the same request to hold the arbitration in abeyance. *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 146. | HHS's failure to participate in the arbitration conflicts with Article 46 of the HHS–NTEU CBA. *Id.* ¶ 98. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the referenced document, in its entirety, for a true and accurate statement of its contents. |

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 147. | On May 29, 2025, an HHS representative emailed this response to an NTEU staff member's request for official time for HHS union representatives and stewards to attend NTEU's 2025 Virtual National Training Conference:<br><br>Please be advised that pursuant to Executive Order 14251 and its implementation within HHS, employees assigned to the following organizations have been excluded from coverage under the Federal Service Labor-Management Relations Statute and, therefore, are not eligible for union representation or the use of Tax-Payer Funded Union Time for union-related activities:<br><br>• Office of the Secretary<br>• Office of the General Counsel<br>• Office of the Chief Information Officer (OCIO)<br>• Food and Drug Administration (FDA)<br>• Centers for Disease Control and Prevention (CDC)<br>• Administration for Strategic Preparedness and Response (ASPR)<br>• National Institute of Allergy and Infectious Diseases (NIAID),<br>• NIH<br>• Office of Refugee Resettlement (ORR), ACF<br><br>As such, HHS will approve the use of Tax-Payer Funded Union Time only for union representatives and stewards who are not employed by these excluded components and are otherwise eligible under applicable law and the parties' CBA. *Id.* ¶ 99, Ex. 34. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 148. | Article 10 of the HHS–NTEU CBA requires HHS to grant official time for union representatives and stewards to attend labor-relations training provided by the union. *Id.* ¶ 99. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the referenced document for a true and accurate statement of their contents. |
| 149. | On May 30, 2025, DFAS informed FDA employees that "[p]ursuant to [the Executive Order], the collection and remittance of union dues from your payroll deduction has been stopped" and would be reflected starting with the pay period ending on May 31. *Id.* ¶ 100, Ex. 35. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents |
| 150. | HHS is required to withhold these dues under 5 U.S.C. § 7115(a) and Article 8 of its CBA with NTEU. *Id.* ¶ 100. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 151. | On June 2, 2025, HHS asked an arbitrator to hold an arbitration in abeyance pending resolution of the Executive Order litigation. *Id.* ¶ 101, Ex. 36. The arbitrator partially granted the request, canceled a hearing that was scheduled for June 10, 2025, and asked the parties to report on the status of the litigation in three months. *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents |
| 152. | HHS's failure to participate in the arbitration conflicts with Article 46 of the HHS–NTEU CBA. *Id.* ¶ 101. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the referenced document for a true and accurate statement of their contents. |

| | | |
|---|---|---|
| 153. | On June 3, 2025, an FDA representative sent an email to NTEU chapter leaders stating that FDA is not recognizing NTEU because of the Executive Order, as follows:<br><br>The Agency maintains its position that until further notice, FDA is not recognizing labor relations with (NTEU/AFGE) in adherence to the presidential Executive Order, the temporary restraining order [sic], ongoing litigation on the Exclusions (EO) Executive Order, and or any other applicable order or guidance that may apply. Now that the injunction has been stayed, the Agency is permitted to take implementation actions consistent with EO 14251 and OPM guidance.<br><br>As a result, agencies are no longer to acknowledge the union. FDA will cease to recognize all labor organizations and will not participate in any labor related activities to include the following. Please be advised, the list below is not exhaustive.<br><br>• FDA is no longer subject to collective-bargaining requirement[s] of chapter 71 of part III, subpart F of title 5 (5 U.S.C. §§ 7101-7135).<br>• FDA is no longer required to collectively bargain with Federal unions.<br>• FDA understands because the statutory authority underlying the original recognition of the relevant unions no longer applies, unions lose their status as the "exclusive[ly] recogni[zed]" labor organizations for employees of the agencies and agency subdivisions covered by Exclusions. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents.<br><br>Subject to recurring Objection Nos. 1 and 2, Defendants dispute the last sentence, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
|  | • FDA arbitrations that are currently in litigation with an arbitrator will discontinue proceedings.<br>• FDA will cease participating in grievance procedures.<br>• FDA will cease participating in further grievance arbitration proceedings following termination of CBA's.<br>• FDA will cease responding to union request [sic] for information.<br>• FDA will cease to acknowledge union official [sic] for meetings.<br>• FDA will cease to send out union notification.<br><br>*Id.* ¶ 102, Ex. 37. FDA's failure to participate in the listed activities conflicts with, at a minimum, Articles 5 and 7 (meetings); Article 45 (grievance procedures; requests for information); and Article 46 (arbitration) of the HHS–NTEU CBA, along with 5 U.S.C. § 7114(b)(4) (requests for information). *Id.* ¶ 102. |  |
| 154. | FCC stopped deducting dues payments from NTEU members' paychecks pursuant to NFC's termination of dues-withholding reflected in its April 9 notice. *Id.* ¶ 93, Ex. 6. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the cited April 9, 2025 communication and legal conclusion and respectfully refer the Court to the referenced exhibit, in its entirety, for a true and accurate statement of its contents. |
| 155. | The agency is required to withhold these dues under 5 U.S.C. § 7115(a) and Article 44 of its CBA with NTEU. *Id.* ¶ 93. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion.  Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 156. | FCC failed to withhold NTEU dues from members' paychecks for NFC Pay Period 9. *Id.* ¶ 94. | Subject to recurring Objection No. 1, Defendants dispute the paragraph.  *See* ¶¶ 98–100, *supra*. |

| | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 157. | On April 14, 2025, a DOE representative responded to an NTEU request to discuss return-to-office procedures as follows: "To NTEU's request to meet, the DOE is currently evaluating the impact of EO 14251 on such meetings and is therefore unavailable to meet at this time." *Id.* ¶ 84, Ex. 23. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 158. | The agency's refusal to discuss this change in employees' conditions of employment conflicts with Article 13 of the DOE–NTEU CBA. *Id.* ¶ 84. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the referenced document for a true and accurate statement of their contents. |
| 159. | On May 22, 2025, DOE informed NTEU via email that "processing is suspended, and [] grievances are being held in abeyance pending litigation [over the Executive Order]." *Id.* ¶ 85, Ex. 24. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 160. | The agency's failure to process grievances and participate in the negotiated grievance procedure conflicts with Articles 11 and 12 of the DOE–NTEU CBA. *Id.* ¶ 85. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 161. | On May 27, 2025, DOE informed NTEU in separate emails that processing of requests for information and the processing of grievances would be "held in abeyance" because of the Executive Order litigation. *Id.* ¶ 86, Ex. 25. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced documents and respectfully refer the Court to the documents for a true and accurate statement of its contents. |
| 162. | DOE is required to respond to requests for information under 5 U.S.C. § 7114(b)(4) and several articles of the DOE–NTEU CBA, including Articles 13, 24, and 43. *Id.* ¶ 86. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 163. | On May 29, 2025, DOE informed NTEU via email that it would not process an official-time request for NTEU training. *Id.* ¶ 87, Ex. 26. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the cited May 29, 2025 communication and legal conclusion and respectfully refer the Court to the referenced exhibit, in its entirety, for a true and accurate statement of its contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 164. | Article 7 of the DOE–NTEU CBA requires the agency to grant NTEU representatives official time to attend training consistent with the terms set forth therein. *Id.* ¶ 87. | Subject to recurring Objection Nos. 1 &and 2, Defendants dispute this paragraph, which is a legal conclusion.  Defendants respectfully refer the Court to the referenced document for a true and accurate statement of their contents.  Plaintiff's characterization of the |
| 165. | On May 30, NTEU learned that DOE's payroll processor DFAS would stop withholding and remitting NTEU dues as of the pay period ending on May 31, 2025. *Id.* ¶¶ 88, 100, Ex. 35. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the cited document, and respectfully refer the Court to that document for a true and accurate statement of its contents.  Defendants further dispute this paragraph because DOE has continued to process dues deductions unless an individual employee requests to stop via a submitted SF-1188.  The agency has received new dues forms (SF-1187) but is not currently processing them due to the Executive Order.  Trznadel Decl. at ¶ 9. |
| 166. | The agency is required to withhold these dues under 5 U.S.C. § 7115(a) and Article 9 of its CBA with NTEU. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion.  Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 167. | BFS stopped deducting dues payments from NTEU members' paychecks pursuant to NFC's termination of dues-withholding reflected in its April 9 notice. Id. ¶ 68, Ex. 6. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization and respectfully refers the Court to the referenced document, in its entirety, for a true and correct statement of its contents. |
| 168. | The agency is required to withhold these dues under 5 U.S.C. § 7115(a) and Article 11 of the BFS–NTEU collective-bargaining agreement. *Id.* ¶ 68. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion.  Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 169. | On May 28, 2025, BFS emailed NTEU directing its attention to a notice entitled "Union Office Space, Union Time." The notice asserted that as of "June 4, 2025, [B]FS will reclaim any agency space, furniture . . . and other resources previously utilized by NTEU for representational activities." *Id.* ¶ 69, Ex. 13. The notice further stated that "effective June 4, 2025, previously authorized [official time] is no longer permitted and all NTEU representatives should <u>only</u> be conducting agency-assigned work during their scheduled duty time." *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 170. | Article 6 of the BFS–NTEU collective-bargaining agreement requires BFS to provide NTEU with office space, furniture, and other resources. *Id.* ¶ 69. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the referenced document for a true and accurate statement of their contents. |
| 171. | Article 9 of the BFS–NTEU collective-bargaining agreement requires BFS to grant official time to NTEU representatives for union activities. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the referenced document for a true and accurate statement of their contents. |
| 172. | On May 29, 2025, NTEU received an email from a BFS representative stating that the agency was "no longer able to process union dues elections effective Pay Period 09 and forward. Any union dues elections that were already processed will be automatically cancelled by the National Finance Center and the employee will not have those dues withheld from their pay." *Id.* ¶ 70, Ex. 14. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 173. | In a June 2, 2025 email, BFS told NTEU that it would not participate in bargaining, citing the Executive Order. *Id.* ¶ 71, Ex. 15. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the cited June 2, 2025 communication and legal conclusion and respectfully refer the Court to the referenced exhibit, in its entirety, for a true and accurate statement of its contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 174. | EPA stopped deducting dues payments from NTEU members' paychecks pursuant to IBC's termination of dues-withholding reflected in its March 28 email. *Id.* ¶ 91, Ex. 5. | Subject to recurring Objection No. 1, Defendants dispute this paragraph. *See* ¶¶ 98–100. |
| 175. | The agency is required to withhold these dues under 5 U.S.C. § 7115(a) and Article 27 of its collective-bargaining agreement with NTEU. *Id.* ¶ 91. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 176. | On May 22, 2025, an EPA representative sent an email to union leaders noting that "EPA's payroll provider has again ceased dues collections." *Id.* ¶ 92, Ex. 29. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 177. | The Departmental Offices stopped deducting dues payments from NTEU members' paychecks pursuant to NFC's termination of dues-withholding reflected in its April 9 notice. *Id.* ¶ 72; *see also id.* Ex. 6. | Subject to recurring Objection No. 1, Defendants dispute this paragraph. *See* ¶¶ 98–100. |
| 178. | The agency is required to withhold these dues under 5 U.S.C. § 7115(a) and Article 36 of its collective-bargaining agreement with NTEU. *Id.* ¶ 72. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 179. | On May 27, 2025, a Departmental Offices representative informed an NTEU staff member that, as summarized by the NTEU staff member, the agency was "being told to stop recognizing [NTEU] again so he won't be able to bargain, process grievances, etc." *Id.* ¶ 73, Ex. 16. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 180. | The agency's failure to bargain or process grievances and its refusal to recognize NTEU are inconsistent with several provisions of the parties' CBA (e.g., Articles 29 & 35) as well as the Statute. *Id.* ¶ 73. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 181. | The Departmental Offices failed to withhold NTEU dues from members' paychecks for NFC Pay Period 9, the first affected pay period following the D.C. Circuit's stay of the District Court's preliminary injunction. *Id.* ¶ 74. | Subject to recurring Objection No. 1, Defendants dispute Defendants dispute this paragraph. *See* ¶¶ 98–100. |
| 182. | OCC stopped deducting dues payments from NTEU members' paychecks pursuant to NFC's termination of dues-withholding reflected in its April 9 notice. *Id.* ¶ 80; see also id. Ex. 6. The agency is required to withhold these dues under 5 U.S.C. § 7115(a) and Article 33 of its collective-bargaining agreement with NTEU. *Id.* ¶ 80. | Subject to recurring Objection No. 1, Defendants dispute this paragraph. *See* ¶¶ 98–100.<br>Subject to recurring Objection Nos. 1 and 2, Defendants dispute the second sentence of this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 183. | On April 1, 2025, an OCC representative emailed an NTEU staff member to cancel a grievance meeting because of the Executive Order. *Id.* ¶ 81, Ex. 21. Article 27 of the OCC–NTEU collective-bargaining agreement requires OCC to participate in this meeting unless it is mutually waived. *Id.* ¶ 81. OCC's cancellation was unilateral, as NTEU did not agree to waive the meeting. *Id.* | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document in the first sentence and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents.<br><br>Subject to recurring Objection Nos. 1 and 2, Defendants object to the second and third sentences of this paragraph because they constitute legal conclusions. |
| 184. | OCC told NTEU in an April 29, 2025 email that "we are not allowed to approve official time for NTEU purposes." *Id.* ¶ 82, Ex. 22. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 185. | Article 6 of the OCC–NTEU collective-bargaining agreement requires OCC to grant official time to employees as detailed therein. *Id.* ¶ 82. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 186. | OCC failed to withhold NTEU dues from members' paychecks for NFC Pay Period 9. *Id.* ¶ 83. | Subject to recurring Objection No. 1, Defendants dispute the paragraph. *See* ¶¶ 98-100, *supra*. |

| | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 187. | TTB told NTEU on April 11, 2025 that pursuant to the Executive Order, NFC "will be halting union deductions for covered Treasury Bureaus[.]" The agency is required to withhold these dues under 5 U.S.C. § 7115(a) and Article 37 of its CBA with NTEU. *Id.* ¶ 75, Ex. 17. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents.<br><br>Subject to recurring Objection Nos. 1 and 2, Defendants dispute the second sentence, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 188. | TTB told NTEU by email on April 14, 2025 that as a result of the Executive Order, "TTB has suspended (until further notice) all proceedings under the CBA including but not limited to: grievances under the Negotiated Grievance Process (NGP), Partnership Council, midterm bargaining, and Requests for Information, etc." *Id.* ¶ 76, Ex. 18. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 189. | The agency's failure to engage in these activities conflicts with several provisions of the TTB–NTEU collective-bargaining agreement (e.g., Articles 4, 34, and 39) as well as the Statute. *Id.* ¶ 76. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 190. | On May 21, 2025, an NTEU staff member reported to the staff member's supervisors that a chapter leader employed by TTB "was informed by TTB over the phone that, per Treasury, they are cutting off collective bargaining again as of today. TTB stated they will not be providing anything in writing." *Id.* ¶ 77, Ex. 19. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 191. | TTB told NTEU by email dated June 2, 2025 that because of the Executive Order, it was "placing all Union grievances and Requests for Information on hold." *Id.* ¶ 78, Ex. 20 | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced document and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 192. | TTB failed to withhold NTEU dues from members' paychecks for NFC Pay Period 9. *Id.* ¶ 79. | Subject to recurring Objection No. 1, Defendants dispute this paragraph. *See* ¶¶ 98–100. |

| | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 193. | The agency is required to withhold these dues under 5 U.S.C. § 7115(a) and Article 37 of its collective-bargaining agreement with NTEU. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph, which is a legal conclusion. Defendants respectfully refer the Court to the cited statute and referenced document for a true and accurate statement of their contents. |
| 194. | BLM stated in an April 2, 2025, email that "[d]ue to the issuance of Executive Order and OPM Guidance: Exclusions From Federal Labor-Management Relations Programs . . . [w]e will be postponing the CBA negotiations scheduled for April 3rd." *Id.* ¶ 103, Ex. 38. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the referenced April 2, 2025 email, and respectfully refer the Court to that document for a true and accurate statement of its contents. Defendants further dispute this paragraph because while BLM New Mexico postponed union negotiations with NTEU Chapter 340 on April 1–3, 2025 to await further direction regarding the Executive Order, those negotiations were later held on May 14–15. Holmes Decl. ¶ 10. |
| 195. | On April 8, 2025, BLM stated in an email that it would not bargain with NTEU over the agency's offering of a deferred resignation program because "[c]onsistent with Executive Order 14251, 'Exclusions from Federal Labor- Management Relations Programs,' which was issued on March 27, 2025, the BLM is excluded from Chapter 71 of Title 5. . . ." *Id.* ¶ 104, Ex. 39. The agency's refusal to bargain is inconsistent with all three of the BLM–NTEU agreements. *Id.* ¶ 104. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the referenced April 8, 2025 email, and respectfully refer the Court to that document for a true and accurate statement of its contents. Defendants further dispute the first sentence of this paragraph because BLM has later changed communications to indicate that BLM would hold any grievances or requests for bargaining in abeyance to the extent that they fall under the purview of Executive Order 1,4251. Holmes Decl. ¶ 11.<br><br>Subject to recurring Objection Nos. 1 and 2, Defendants dispute the third sentence, which is a legal conclusion. Defendants respectfully refer the Court to the referenced documents for a true and accurate statement of their contents. |
| 196. | On April 11, 2025, BLM told NTEU by email that it would be postponing a scheduled Labor Management Relations Committee meeting scheduled for April 14 because of the Executive Order. *Id.* ¶ 105, Ex. 40. | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the referenced April 11, 2025 email, and respectfully refer the Court to that document for a true and accurate statement of its contents. Defendants further dispute this paragraph because while BLM New Mexico postponed the referenced meeting to determine which employees were a part of the bargaining unit, the meeting was later held on May 12, 2025. Holmes Decl. at ¶ 12. |

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 197. | BLM failed to withhold NTEU dues from members' paychecks for IBC Pay Period 11. *Id.* ¶ 106. The agency is required to withhold these dues under 5 U.S.C. § 7115(a) and each of its agreements with NTEU. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants dispute this paragraph because it constitutes a legal conclusion, not a statement of fact, and respectfully refers the Court to the referenced statute and collective bargaining agreements for a true and accurate statement of their contents. |
| 198. | On May 22, 2025, the president of one of NTEU's BLM chapters informed NTEU staff that earnings statements for the pay period ending on May 17, 2025 (Pay Period 11) did not show dues withholdings. *Id.* ¶ 197, Ex. 41. The chapter president observed that "since the [Exclusions] EO" was issued, the only pay period for which "dues have been withheld was [Pay Period 10]." *Id.* | Subject to recurring Objection Nos. 1 and 3, Defendants dispute Plaintiff's characterization of the referenced May 22, 2025 communication, which is immaterial and hearsay in any event, and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents. |
| 199. | On May 28, 2025, BLM refused a bargaining-unit employee's request to have a union representative join her in a meeting concerning a reasonable accommodation process: "Due to the current STAY of the preliminary injunction in place, we cannot add union representative[s] to our calls." *Id.* ¶ 108, Ex. 42. BLM's refusal to allow a union representative to join the meeting conflicts with Article 5 of the applicable collective-bargaining agreement with NTEU. *Id.* ¶ 108. | Subject to recurring Objection No. 1, Defendants dispute Plaintiff's characterization of the referenced May 28, 2025 communication and legal conclusion in the first sentence of this paragraph, and respectfully refer the Court to the document, in its entirety, for a true and accurate statement of its contents.<br><br>Subject to recurring Objection Nos. 1 and 2, Defendants dispute Plaintiff's characterization of the referenced collective-bargaining agreement and legal conclusion in the second sentence of this paragraph, and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. |

|  | **Assertion by Plaintiff in Statement of Facts** | **Defendants' Responses** |
|---|---|---|
| 200. | On May 29, 2025, BLM asked NTEU if it still wished to bargain the following month. BLM informed NTEU that "to be in compliance with EO 14251 'Exclusions from Federal Labor Management Relations Programs,' official time will be granted for [bargaining-unit employee] fire personnel only on the CBA team." *Id.* ¶ 109, Ex. 43. The agency's failure to grant official time to every member of the bargaining team is inconsistent with Paragraph 4 of the applicable interim agreement. *Id.* ¶ 109. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute the first two sentences of this paragraph because they constitute Plaintiff's characterization of the May 29, 2025 communication, which is immaterial in any event. Defendants respectfully refer the Court to the communication for a true and accurate statement of its contents.<br><br>With respect to the third sentence of this paragraph, subject to recurring Objections Nos. 1 and 2, Defendants dispute Plaintiff's characterization of the referenced collective-bargaining agreement and legal conclusion, and respectfully refer the Court to the referenced collective bargaining agreement for a true and accurate statement of its contents. |
| 201. | NTEU has been the exclusive representative of bargaining-unit employees in DOJ's Environment and Natural Resources (ENRD) and Civil Rights (CRT) Divisions since January 2025, but the parties do not yet have a written collective-bargaining agreement. *Id.* ¶ 89. | Subject to recurring Objection No. 1, Defendants object to this paragraph as immaterial. |
| 202. | Despite NTEU's repeated requests to initiate dues withholding, DOJ has refused to engage with NTEU regarding either bargaining unit. *Id.* | Subject to recurring Objection Nos. 1 and 3, Defendants dispute this paragraph. *See* Hirt Decl. ¶¶ 6–7. |
| 203. | NTEU most recently reiterated its request that DOJ meet with NTEU to discuss dues-withholding for each bargaining unit on May 12, 2025. *Id.* ¶ 90, Exs. 27, 28. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute Plaintiff's characterization of the cited May 12, 2025 communication, which is immaterial in any event. Defendants respectfully refer the Court to that communication for a true and accurate statement of its contents. |

|  | Assertion by Plaintiff in Statement of Facts | Defendants' Responses |
|---|---|---|
| 204. | On January 28, 2025, the Administration, via a "Fork in the Road" email, offered employees a "deferred resignation program." *Id.* ¶ 41. NTEU-represented employees in each of the agencies or agency components at issue received that offer, and some NTEU-represented employees in each of the agencies or agency components at issue here accepted that offer and had their applications processed. *Id.* | Subject to recurring Objection Nos. 1 and 2, Defendants dispute Plaintiff's characterization of the cited January 28, 2025 communication, which is immaterial in any event. Further, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the cited communication for a true and accurate statement of its contents. Defendants dispute the second sentence in this paragraph because it relies on a conclusory and unsupported statement in paragraph 41 of Plaintiff's Kaspar declaration. |
| 205. | The administration's deferred resignation program was not available to employees in "positions related to . . . national security." OPM, Guidance Regarding Deferred Resignation Program (Jan. 28, 2025) at 3, https://perma.cc/ZZZ4-N2NZ. *Id.* ¶ 42. | Subject to recurring Objection Nos. 1 and 2, Defendants dispute Plaintiff's characterization of the cited January 28, 2025 Guidance document, which is immaterial in any event. Further, this paragraph contains a legal conclusion, not a statement of fact. Defendants respectfully refer the Court to the January 28, 2025 Guidance for a true and accurate statement of its contents. |

Dated: June 23, 2025

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
EMILY M. HALL
TYLER BECKER
Counsel to the Assistant Attorney General
Civil Division

ERIC HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

ALEXANDER K. HAAS
Director
Civil Division, Federal Programs Branch

JACQUELINE COLEMAN SNEAD

Assistant Branch Director
Civil Division, Federal Programs Branch

_/s/ Syed Ahmad_
SYED AHMAD (IL Bar 6217343)
LYDIA JINES
JEREMY MAURITZEN
Trial Attorneys
LISA ZEIDNER MARCUS
Senior Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L St., NW, Twelfth Floor
Washington, DC 20530
Tel: (202) 307-2092
Fax: (202) 616-8470
Email: syed.n.ahmad@usdoj.gov

*Counsel for Defendants*